# 14-3201

## In the
## United States Court of Appeals
### For the Second Circuit



DONALD M. THEA and DEBORAH L. THEA,

*Plaintiffs-Appellants,*

v.

NEIL C. KLEINHANDLER, As Trustee of the Frederica Fisher
Thea Revocable Trust, New School University and
ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFFS-APPELLANTS

EDWARDS WILDMAN PALMER LLP
*Attorneys for Plaintiffs-Appellants*
750 Lexington Avenue
New York, New York 10022
(212) 912-2759

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED...........................................................................2

STATEMENT OF THE CASE...............................................................3

FACTS AND PROCEDURAL HISTORY ...........................................14

I.      The Amended Complaint................................................................14

II.     The District Court's Ruling on the Motions to Dismiss...............21

III.    The Theas' Proposed Second Amended Complaint.......................23

IV.     The District Court's Decision on the Theas' Motion for Leave to
        Amend.............................................................................................25

V.      The Theas' Appeal.........................................................................29

ARGUMENT .......................................................................................29

I.      This Court Must Review the District Court's Order De Novo ....29

II.     The Theas Have Individual Standing to Enforce the Agreement.................29

III.    No Statute of Limitation Bars the Estate's Claims.......................37

        A.      EPTL 7-3.1 Is Subject Only To a New York Statute Of
                Limitations.........................................................................37

        B.      The District Court Misapplied the Borrowing Statute to the
                Common Law Claims.........................................................39

        C.      Even if California Law Applies, § 366.3, Specifically, Does Not.....44

                1.      On its Face, §366.3 Does not Apply to  Claims by the
                        Estate for Recovery Into the Estate.........................45

                2.      The District Court Ignored California Case Law
                        Questioning the Application of §366.3 in the Very Type
                        of Situation Presented Here ....................................49

**TABLE OF CONTENTS**
(continued)

**Page**

3.    The District Court Placed an Impermissible Burden on
the Theas With Respect to Equitable Estoppel........................50

CONCLUSION....................................................................................55

CERTIFICATE OF COMPLIANCE....................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Absolute Activist Master Value Fund, Ltd. v. Ficeto,
 09-cv-8862, 2013 WL 1286170 (S.D.N.Y. Mar. 28, 2013) ...............................51

Allen v. Payson,
 170 Misc. 759 (Queens County 1939) .................................................................44

Allen v. Stoddard,
 212 Cal. App. 4th 807 (4th Dist. 2013) ...................................................45, 49, 50

Ashcroft v. Iqbal,
 556 U.S. 662 (2009) ............................................................................................29

Aylward v. Landry,
 226 B.R. 507 (D. Mass. Bankr. 1998) .................................................................39

Becnel v. Deutsche Bank, AG,
 507 F. App'x 71 (2d Cir. 2013) ...........................................................................42

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts
 Worldwide, Inc.,
 369 F.3d 212 (2d Cir. 2004) ...............................................................................41

Brown v. Australian Airlines,
 97-cv-3798, 1997 U.S. Dist. LEXIS 21313 (E.D.N.Y. Dec. 9, 1997) ..............38

Chillemi v. Town of Southampton,
 943 F. Supp. 2d 365 (E.D.N.Y. 2013) .................................................................51

Doe v. Harbor Schs., Inc.,
 446 Mass. 245 (2006) ..........................................................................................43

Dziennik v. Sealift, Inc.,
 06-cv-5305, 2013 U.S. Dist. LEXIS 143407 (E.D.N.Y. Sept. 30, 2013)...........43

Feld v. Feld,
 279 A.D.2d 393 (1st Dep't 2001) ........................................................................42

i

Glass v. Battista,
    43 N.Y.2d 620 (1978) ........................................................................34

Gorman v. Consol. Edison Corp.,
    488 F.3d 586 (2d Cir. 2007) .............................................................29

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999) .....................................................51, 53

In re Carvel Found.,
    8 Misc. 3d 1025(A) (Sur. Ct., Westchester County 2002) ...........33, 38

In re Estate of Runals,
    68 Misc. 2d 967 (Sur. Ct. Cattaraugus County 1972) .......................36

Joyce v. Thompson Wigdor & Gilly,
    06-cv-15315, 2008 U.S. Dist. LEXIS 43210 (S.D.N.Y. June 3, 2008).............41

Kates v. Yeshiva University,
    13 N.Y.2d 805 (1963) .................................................................33, 34

Lix v. Edwards,
    82 Cal. App. 3d 573 (2d Dist. 1978)...................................................52

Martin v. Van Bergen,
    209 Cal. App. 4th 84 (2d Dist. 2012) ................................................48

Matter of Donner,
    82 N.Y.2d 574 (1993) .......................................................................36

Matter of Halbert,
    28 Misc.3d 1233(A) (Sur. Ct., Sullivan County 2010) ................37, 44

Matter of McLaughlin,
    78 A.D.3d 1304 (3d Dep't 2010).......................................................40

Matter of Thomas,
    28 Misc. 3d 300 (Broome County 2010)...........................................40

Maxwell-Jolly v. Martin,
    198 Cal. App. 4th 347 (1st Dist. 2011)..............................................45

McMackin v. Ehrheart,
    194 Cal. App. 4th 128 (2d Dist. 2011) ........................................................45, 53

Nelson v. Nevel,
    154 Cal. App. 3d 132 (2d Dist. 1984).................................................................48

Olsen v. Olsen,
    189 Misc. 1046 (Sup. Ct., Queens County 1947)................................................32

Rastetter v. Hoenninger,
    214 N.Y. 66 (1914) ...........................................................................................31

Rich v. Mottek,
    11 N.Y.2d 90 (1962) .........................................................................................34

Rosen v. Brookhaven Capital Mgmt., Co.,
    194 F. Supp. 2d 224 (S.D.N.Y. 2002) ...............................................................51

Rubin v. Irving Trust Co.,
    305 N.Y. 288 (1953) .........................................................................................44

Schuh v. Druckman & Sinel, L.L.P.,
    602 F. Supp. 2d 454 (S.D.N.Y. 2009) ...............................................................41

Schwartz v. Horn,
    31 N.Y.2d 275 (1972) .................................................................................30, 31

Starr v. Sony BMG Music Entm't,
    592 F.2d 314 (2d Cir. 2010) .............................................................................29

State Street Bank & Trust Co. v. Reiser,
    7 Mass. App. Ct. 633 (1979).............................................................................39

State v. Cetero,
    233 A.D.2d 580 (3d Dep't 1996).......................................................................38

Stewart v. Seward,
    148 Cal. App. 4th 1513 (2d Dist. 2007) ............................................................45

Thomas v. Canyon,
    2011 Cal. App. Unpub. LEXIS 5471 (1st Dist. July 22, 2011)....................43, 48

Tutunjian v. Vetzigian,
    299 N.Y. 315 (1949) ....................................................................30, 33, 34, 37

**STATUTES**

28 U.S.C. § 1291 ...................................................................................................1

28 U.S.C. § 1332 ...................................................................................................1

CPLR 202 ...............................................................................................9, 12, 25, 39

CPLR 213(1) ..........................................................................................................38

CPLR 214(3) ..........................................................................................................42

EPTL 7-3.1 ............................................................................................9, 10, 21, 24, 37

EPTL 13-2.1(a) .......................................................................................................29

Cal. Civ. Code § 15304(a) ......................................................................................39

Cal. Civ. Proc. § 318 ..............................................................................................48

Cal. Civ. Proc. § 338(c)(1) .....................................................................................48

Cal. Civ. Proc. § 339(1) .........................................................................................48

Cal. Civ. Proc. § 343 .........................................................................................39, 48

Cal. Civ. Proc. § 348; .............................................................................................43

Cal. Civ. Proc. § 366.3 ....................................................................................passim

Cal. Gov't Code § 27491 ........................................................................................20

Cal. Prob. Code § 44 ..............................................................................................52

Cal. Prob Code § 6402 ...........................................................................................52

Cal. Prob. Code § 9353(a) ......................................................................................49

Cal. Prob. Code § 9531 ..........................................................................................49

Cal. Prob. Code § 16061.7 .....................................................................................52

Cal. Prob. Code § 16061.9(b) ................................................................52

Mass. Gen. Laws ch. 260 § 2A ......................................................39, 43

**OTHER AUTHORITIES**

Fed. R. App. P. 4(a)(1)(A) ......................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................51, 52

Plaintiffs-Appellants Donald M. Thea and Deborah L. Thea (collectively, "the Theas") respectfully submit this brief in support of their appeal of the Memorandum and Order of United States District Judge P. Kevin Castel of the Southern District of New York, dated August 1, 2014, denying the Theas leave to file a Proposed Second Amended Complaint ("PSAC"); the Judgment dismissing the case, entered August 4, 2014; and all prior orders and judgments subsumed therein.

## JURISDICTIONAL STATEMENT

The basis of the District Court's jurisdiction is 28 U.S.C. § 1332 because, on the one hand, Donald Thea is a citizen of the commonwealth of Massachusetts and Deborah Thea is a citizen of California, and on the other hand, defendant-appellees Neil C. Kleinhandler ("Kleinhandler"), New School University ("New School"), and Eric T. Schneiderman, as Attorney General of the State of New York ("Attorney General"), are all citizens of New York, and the amount in controversy exceeds $75,000. Defendants-Appellees do not contest personal jurisdiction.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the appeal is from final judgment of the District Court. This appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A) because the Order and Judgment appealed from were entered

on August 1, 2014 and August 4, 2014, respectively (A-295, 310),[1] and the Theas

filed their notice of appeal on August 27, 2014. (A-311.)

This appeal is from a final order and judgment disposing of all parties'

claims.

## ISSUES PRESENTED

1.  Did the District Court improperly hold that plaintiffs-appellants, the

    beneficiaries of an agreement to make wills, did not have standing to enforce

    that agreement in their individual capacities?

2.  With respect to claims brought by plaintiffs-appellants pursuant to New

    York statute, did the District Court err in applying the statute of limitations

    of another state, where case law expressly holds that only a New York

    statute of limitations may be applied?

3.  Where it is undisputed that a claim for recovery of property accrues in the

    state in which the property is located, did the District Court improperly

    conclude that all such claims brought by plaintiffs-appellants accrued in

    California where there is record evidence that some of that property is

    located in New York?

---

[1] References to "A-___" are to pages in the parties' joint appendix.

4.      May a federal court sitting in New York apply a California state statute of

limitations that, on its face, refers only to claims <u>against</u> an estate, in

precisely the opposite context, to claims brought <u>by</u> an estate to recover

assets <u>into</u> the estate, where no California court has ever done so?

5.      Where plaintiffs-appellants sought to avoid dismissal of their complaint by

arguing that defendants-appellees were equitably estopped from asserting a

statute of limitations, did the District Court, in dismissing the complaint,

improperly hold that it was plaintiffs-appellants burden to plead with

specificity in avoidance of an affirmative defense?

## <u>STATEMENT OF THE CASE</u>

Donald and Deborah Thea are, respectively, an international epidemiologist

who assists with diseases in Africa and who lives in Massachusetts, and a disabled

senior who lives in California.  They are the only children of Stanley Thea and his

first wife.  Late in life Stanley married Frederica Fisher Thea, who had no children

of her own.  During their marriage, and under the supervision of an attorney,

Stanley and Frederica entered into a formal agreement to make wills

("Agreement"), which required that Stanley and Frederica each make mutual wills

in precisely the form attached to that Agreement, and that neither would ever alter

or revoke those wills.  Both Stanley and Frederica did in fact execute wills in the

3

form required by the Agreement.  The gravamen of their arrangement was that, if Stanley should die first, then Frederica would have the benefit of Stanley's assets during her lifetime, but that when she died, Stanley's children Donald and Deborah, the plaintiffs-appellants herein, would inherit their father's estate. Stanley did in fact predecease Frederica in the late 1990s, and Frederica inherited all of his assets pursuant to his mutual will.  It is undisputed that, legally, having thereby received the full benefit of the Agreement, Frederica held all assets <u>in trust</u> for the Theas.  She was permitted to use those assets for her regular and ordinary needs, but could not make gifts or other dispositions (testamentary or non-testamentary) in derogation of her Agreement with Stanley or which would serve to defeat the Theas' inheritance from their father.  Instead, the Theas have had their inheritance stolen from them.  Just as egregious, there is absolutely no doubt that these defendants-appellees have also utterly trampled upon the Agreement and upon Stanley's last wishes with respect to the disposition of his property.

The facts of what transpired here are largely admitted and are summarized as follows:

Apparently, Frederica was upset that (during the probate of Stanley's estate) the Theas had contested certain death-bed changes made by Stanley to some of the beneficiary designations on his retirement accounts.  Whatever the reason, in or about 2002 (and just a few months after Stanley's estate was distributed to her)

Frederica (aided by defendant Kleinhandler, her attorney in Stanley's contested

probate proceeding, and also her friend) created the Frederica Fisher Thea

Revocable Trust (the "Trust").  Frederica and Kleinhandler were the co-trustees of

that Trust.  The Theas had no contemporaneous knowledge of the creation of the

Trust.  Nor did they have any contemporaneous knowledge that Frederica then sold

the various pieces of real property she had inherited from Stanley and placed the

proceeds into the Trust, along with substantially all other assets (thereby emptying

her estate and leaving nothing to pass to the Theas by her will).  Nor did they know

that Frederica then apparently caused the Trust to use at least some of those

proceeds to purchase a residence in California, to which she later moved.  Nor did

the Theas know that in February, 2012 Frederica committed suicide at her home in

California.  She was still relatively young, being only 69 years of age, and was not

suffering from any terminal illness or other serious physical ailments.

       When Frederica died the Trust became irrevocable and, under California

law, Kleinhandler, now its sole trustee, had a statutory obligation to inform the

Theas of Frederica's passing, and of the process for making a claim to Trust

property.  He did none of that.  Instead, when (pursuant to Frederica's suicide note)

Kleinhandler was alerted to Frederica's death by California law enforcement, he

falsely represented himself to California law enforcement to be the executor of

Frederica's estate (in fact, under Frederica's will, the Theas are nominated as her

executors), he took possession of Frederica's body, made arrangements for the disposition of her body by cremation, and put Frederica's residence up for sale. Kleinhandler did not cause any obituary to be published in any newspaper, on the internet, or elsewhere. Although he knew of the Agreement, knew the Theas, knew their status as beneficiaries under the Agreement, and knew their status as beneficiaries under and executors of Frederica's estate, he failed to notify the Theas of Frederica's passing or that he was doing any of the above. He did not commence any probate or administration proceedings (which would have resulted in notice to the Theas). Kleinhandler did all of this contrary to the Theas' interests and for the purpose and with the effect of hiding Frederica's death from them and depriving them of their rights and property. In short, he knew that the Theas were supposed to receive all of Stanley's and Frederica's property, and he took these steps in order to prevent the Theas from being informed about or pressing their rights. In or about May, 2013, Donald Thea came to learn of Frederica's death serendipitously. The Theas then contacted counsel, and this proceeding was promptly commenced in July, 2013, less than eighteen months after Frederica's passing and a mere six weeks after they discovered Frederica's death.

Discovery had barely begun (some initial documents were exchanged and some interrogatories answered) when the District Court granted defendants-appellees' request to stay discovery in light of motions to dismiss that they planned

to make.  In a Memorandum and Order dated May 13, 2014 ("May Order"), the District Court granted those motions to dismiss to the extent of determining that the Theas, individually, lacked standing to press their claims directly; the District Court ruled that, instead, a representative of Frederica's estate must be joined as a necessary party; and the District Court stated that a motion for leave to amend by an estate fiduciary could be made within twenty-one days.  The District Court also concluded that it could not adjudicate the Theas' claims for constructive trust and equitable accounting (because a probate court had not determined them to be beneficiaries of Frederica's estate), or for breach of fiduciary duty (because Kleinhandler had not been appointed an estate fiduciary).

The May Order was clearly erroneous.  Its fundamental premise (stated at A-210-11) is that enforcement of an agreement to make wills "is typically prosecuted in two stages" – first, an action by the Theas against the estate for specific performance of the Agreement and second, an action by the estate against the Trust to recover estate property.  Thus, it concluded that, while in certain circumstances these two actions could be prosecuted in one litigation, the Theas had no right of direct action to enforce the Agreement, and an estate representative was a necessary party.  But none of the cases the District Court cited even so much as mentions this "two-action" paradigm or holds that estate representatives are necessary parties.  Nor did defendants-appellees move on this ground.  It was a

7

creation of the District Court and is directly contrary to the cases it cited, including several from the New York Court of Appeals that hold exactly the opposite and recognize that the Theas have a direct action against the holders of Frederica's property, individually, without having those claims first asserted for them by a representative of her estate. Nor does any case find the necessity for a probate court to declare the Theas estate beneficiaries. The law is clear that they have an independent right, individually, to enforce the resulting trust which arose in their favor from the Agreement.

Likewise, the law is also clear that the resulting trust is equally applicable to anyone to whom Frederica transferred property in derogation of the Agreement. Thus, Kleinhandler held property impressed with a trust in the Thea's favor, and so owed them fiduciary duties, which duties are in no way premised on him being named the personal representative of Frederica's estate.

Nevertheless, the Theas rushed to California to retain counsel to bring on a probate proceeding within the twenty-one days allowed by the District Court. Despite the crushing time constraints, the Theas (given that they are the executors under Frederica's will) were successful in quickly obtaining letters of Special Administration. Then, again within the twenty-one day time limit imposed by the District Court, they brought a motion seeking leave to amend their complaint and attached a form of proposed second amended complaint to that motion. The PSAC

8

added to the preexisting counts of the complaint new counts brought by the Theas in their capacity as Special Administrators of Frederica's estate, and in their capacity as creditors of Frederica and her estate. Defendants-Appellees opposed the motion for leave to amend, primarily on the grounds of a supposed one-year California statute of limitations.

In a Memorandum and Order, dated August 1, 2014 ("August Order"), the District Court reiterated and incorporated its prior erroneous ruling that the Theas in their individual capacity lacked standing. To the extent the Theas brought claims as estate fiduciaries, it determined that those claims were time-barred under a one-year California statute. On that basis it denied the motion for leave to amend and ordered the case to be closed.

The District Court clearly erred in its statute of limitations analysis as well. It concluded that all claims are governed by New York law, including CPLR 202, New York's "borrowing statute," which can make a foreign statute of limitations applicable to a claim filed in the state by a non-resident if the claim accrued outside the state. Its errors include:

one, the Theas asserted a claim under section 7-3.1 of New York's Estates, Powers, and Trust law ("EPTL"). That statute clearly and unequivocally states that transfers by the creator of a trust into her own trust are void as against subsequent creditors. The Theas cited case law holding that New York statutory causes of

9

action – specifically including EPTL 7-3.1 – can only accrue in New York and are subject only to New York's statutes of limitations. Defendants-Appellees cited no contrary case law. Moreover, to the extent they apply, all foreign statutes of limitations for analogous claims are far longer than one year. The District Court did not separately address this law or this claim at all, but simply dismissed it without any discussion whatsoever;

two, the District Court acknowledged (at A-305) that "when a complaint seeks recovery of property in New York, New York law will generally apply." Yet, the District Court erroneously focused on the fact that the PSAC alleges that some Trust property in New York was sold to buy a residence in California, and so applied California law. It ignored the fact that the Trust, which is located in New York, also holds money and securities worth hundreds of thousands of dollars in New York. The District Court ruled that since the Theas had not specifically pled this in their PSAC, it would not consider this argument. That was error because it is the defendants' burden to establish their statute of limitations defense; the Theas have no burden in their pleading to negative an affirmative defense. Moreover, the PSAC does not state that all Trust property was used to buy the California residence. Indeed, on the motion to dismiss the Theas had actually submitted documents (produced by the Trust) showing that the Trust still has significant

assets in New York.  The District Court ignored that record evidence in deciding

not to allow further amendment;

three, after deciding to look to a California statute of limitations, the District

Court wrongly chose section 366.3 of the California Code of Civil Procedure.  That

statute is addressed to one who has a claim "to distribution from an estate" based

on a contract; it establishes a one year statute of limitations to bring "an action to

enforce the claim to distribution" (emphasis added).  By its express terms

therefore, and consistent with all of its legislative history, this statute is directed to

claims made against an estate for distribution from the estate of estate assets.  No

such claim is presented here.  The Theas, as Special Administrators of Frederica's

estate, did not assert any claim against the estate.  Rather, all claims are against the

Trust and/or its trustee and/or its beneficiary claiming that assets in the Trust

belong either to the Theas or to the estate.  Section 366.3 applies to the opposite

situation.  Neither the Theas, nor defendants-appellees, nor the District Court, were

able to locate a single case in which § 366.3 has been applied in the manner in

which the District Court applied it.  An analogy to bankruptcy is illustrative.  In the

bankruptcy context, creditors who wish to assert claims against assets of the

bankrupt estate are often subject to very short time limits.  But those time limits do

not apply to claims brought by the trustee of the debtor's estate against third

parties, in which the trustee seeks to marshal and recover property of the

11

bankrupt's estate.  The same is true of estate representatives in the probate context.
When estate representatives bring claims against third parties in order to recover
into the estate property claimed to belong to the estate, those claims are subject to
whatever statute of limitations applies to the underlying cause of action.  Such
claims are not governed by the time limits within which creditors must commence
proceedings against the estate.  Yet here the District Court turned this law on its
head and applied the wrong statute of limitations to the Theas' claims;

 <u>four</u>, a California appellate court has itself pointed out that § 366.3 is in
"irreconcilable conflict" with the provisions of the California Probate Code
governing the time limits for asserting claims, and expressly declined to decide that
the time limit of § 366.3 would govern in a situation where (as here) one of the
parties tried to "run out the clock" on the other.  The District Court did not address
this issue at all;

 <u>five</u>, even if section 366.3 did apply (which it does not), under the law of
California it is subject to equitable tolling.  New York law is clear that, if a foreign
statute of limitations is "borrowed" under CPLR 202, the court is obliged to apply
all of the foreign jurisdiction's law applicable to that limitations determination.
California case law holds that defendants may be equitably estopped from asserting
§ 366.3.  California law also establishes that whether defendants are equitably
estopped from asserting § 366.3 is a question of fact that cannot be resolved on a

motion to dismiss (or on a motion for leave to amend). Here, the District Court stated that, to invoke estoppel, "the Theas would need to allege that Kleinhandler, through action or inaction, prevented them from timely bringing suit." (A-308.) This is a misstatement of the law since it is defendants who bear the burden to establish their statute of limitations defense, and it is never the obligation of a plaintiff to plead in avoidance of an affirmative defense. In any event, however, both the prior complaint and the PSAC did in fact allege exactly that, including various acts and omissions designed to hide (and having the effect of hiding) Frederica's death from the Theas and preventing them from asserting their rights. The District Court found that the PSAC was nevertheless defective because "it does not specify when the Theas learned of her [Frederica's] death and thus knew they potentially had a claim. As this information is not present in the PSAC, the court is <u>unable to conclude</u> that Kleinhandler should be estopped from invoking the statute of limitations in this instance" (emphasis added). First, the Theas had no obligation to allege this exact date since they are not required to plead in avoidance of an affirmative defense. Second, none of the defendants-appellees ever raised this issue because they knew (via the Theas' interrogatory answers) that the Theas did not in fact learn of Frederica's death within the one-year period of § 366.3. The District Court created this argument out of whole cloth. Third, the District Court in any event determined that without this information it was "unable to

13

conclude" whether or not estoppel applies to this case. Thus, the District Court expressly acknowledged that the issue <u>cannot be determined on the pleadings alone</u>. It was therefore manifest error for the District Court to deny the Theas leave to amend. The District Court's determination in this regard was a substantial miscarriage of justice.

Accordingly, it is respectfully submitted that the order and judgment appealed from should be reversed in its entirety, that it be determined and adjudged by this Court that the Theas' claims are not barred by any applicable statute of limitations, and/or that if California Code of Civil Procedure § 366.3 does apply that a determination of whether defendants-appellees are estopped to assert it must await the trial of this action.

## **FACTS AND PROCEDURAL HISTORY**

### I. **The Amended Complaint**[2]

On or about August 28, 2013, the Theas filed an Amended Complaint ("AC"). (A-93.) In substance, the AC alleges as follows. The Theas are the only children of Stanley and his first wife. (A-95 ¶ 11.) Frederica was Stanley's third wife and had no children of her own. <u>Id.</u> During their marriage, Stanley and

---

[2] The Theas' initial complaint is dated July 15, 2014. (A-12.) Kleinhandler answered the initial complaint, in which he made several pertinent admissions, discussed below. (A-84.) Discovery commenced. Then Kleinhandler requested that the Theas amend to add as parties the New School and the Attorney General, which the Theas did. Only after the other defendants-appellants were joined did Kleinhandler seek to stay discovery to make a motion to dismiss.

Frederica entered into a valid and binding Agreement (attached as an exhibit to the complaint) wherein they each promised to execute specific forms of Last Wills and Testaments, which were annexed thereto.  (A-95 ¶¶ 12-13; A-23.)  Frederica agreed that such will "shall be her Last Will and Testament."  (A-23 ¶ 5.)  Stanley and Frederica also agreed that both of their Last Wills and Testaments would "continue in full force and effect and shall not be altered or revoked by the respective party executing the same during his or her life, except with the written consent of the other party."  (A-23 ¶ 6.)

In the event that Stanley predeceased Frederica, the required forms of Last Wills and Testaments provided that Frederica would inherit Stanley's entire estate, including his Manhattan apartment, his Astoria, Queens apartment, and his IRA (valued in Stanley's will at about $1.1 million).  Those wills also provided that when Frederica died, the Theas would be Frederica's sole executors, and that the Theas would inherit:  (1) "all household and personal effects" belonging to Frederica at her death, in equal shares, and (2) "all the residue and remainder of [Frederica's] estate of whatsoever kind and wheresoever situate," in equal shares.  (A-25-26, 28-32, Arts. 2-4,7.)

Thus, the plain language of the Agreement reflects the clear intention of the parties that if Stanley predeceased Frederica, then Frederica would have the first benefit of Stanley's assets, but upon Frederica's death those assets (and any other

15

property of Frederica) would pass to the Theas. Stanley did in fact predecease

Frederica, in 1998. (A-96 ¶ 20.) Frederica, at that time, obtained the full benefit of

the Agreement by inheriting all of Stanley's assets under the will he made pursuant

to the Agreement. (A-96-97 ¶¶ 22, 24.) Nevertheless, shortly after inheriting from

Stanley, Frederica and Kleinhandler actively and intentionally attempted to evade

the Agreement and deprive the Theas of their inheritance. (A-97 ¶¶ 25 et seq.)

Kleinhandler admits that he was one of the attorneys representing Frederica

with respect to Stanley's estate (A-86 ¶ 22) and that Kleinhandler's firm served as

Frederica's attorneys in connection with Stanley's contested probate. (A-86 ¶ 23.)

Kleinhandler also admitted he is the one who reported Frederica's death to the

authorities, and that he did not report it to the Theas. (A-87 ¶ 30.) Kleinhandler

also admitted that he was aware of the existence of, and terms of, the Agreement

and the wills – in fact, he produced the fully executed Agreement (including the

form of Frederica's will) multiple times in limited discovery in this action. (A-87 ¶

25; A-98 ¶ 32; A-175) Kleinhandler had actual knowledge of all facts giving rise

to the Theas' claims, and that he, Frederica, and the Trust held all Frederica's

property for the ultimate benefit of the Theas. (A-98 ¶ 33.)

Frederica apparently harbored animosity towards the Theas because they

asserted undue influence claims against her in connection with Stanley's estate

proceedings. (A-97 ¶ 26.) Kleinhandler represented Frederica in connection with

16

those claims.  (A-97 ¶¶ 26-27.)  Thus, not only did he know of the Theas from their being identified multiple times in the Agreement and in the forms of Last Will and Testament annexed thereto – he also knew them from representing Frederica against them in connection with prior litigation.  The final accounting of Stanley's estate was judicially approved on October 21, 2002; the Trust was created by Kleinhandler and Frederica in New York less than two months later, on December 17, 2002.  (A-135, 165.)  The Trust is, and always has been, governed by New York law.  (A-98 ¶¶ 36-37.)  The Theas had no knowledge of the Trust's creation, existence, assets, or terms at any point prior to Frederica's death.  (A-102 ¶¶ 71-73.)

Kleinhandler also admits that he and Frederica transferred into the Trust substantially all of Frederica's assets, including those she had inherited from Stanley.  (A-87 ¶¶ 27, 30.)  That included, inter alia, Stanley's Manhattan apartment and Astoria apartment.  (A-99 ¶ 42.)  Kleinhandler admits that the Trust subsequently sold the Manhattan apartment for approximately $1.65 million and that the proceeds of that sale were placed into the Trust, again in New York.  (A-87 ¶¶ 32-33.)  The Astoria apartment was also sold, and those proceeds also went into the Trust, again in New York.  (A-99 ¶ 44.)  The Trust then purchased, for approximately $1.9 million, a residence for Frederica at 24704 Aguajito Road, Carmel, California 93923 (the "California Residence").  (A-87 ¶ 35.)  The

17

California Residence was purchased with some or all proceeds of the sales of the Manhattan and Astoria apartments, i.e., New York Trust assets. (A-99 ¶ 47.) Title to the California Residence was (and still is) held by the New York Trust. (A-68.) The Theas also learned, through limited discovery, that at the inception of this litigation the Trust also owned securities and money, located in various bank and brokerage accounts in New York, valued at roughly $500,000. (A-176.)

Frederica committed suicide on or about February 4, 2012. (A-88 ¶¶ 38-39.) Kleinhandler is listed as "Informant" on her Certificate of Death. (A-100 ¶ 52.) About a week later, the California Residence was listed for sale with a real estate broker; it remained listed for sale for about $1.8 million. (A-100 ¶ 53.)

Kleinhandler admits that he did not inform the Theas of Frederica's death (or, for that matter, the attempted sale of the California Residence). (A-88 ¶ 41.) The Agreement recites that Frederica executed a Last Will and Testament in the form directed by the Agreement. (A-23 ¶ 5.) However, since her February 4, 2012 death, Kleinhandler has not commenced any probate or Trust proceedings, and no actual or constructive notice was given by Kleinhandler to the Theas of Frederica's death. (A-101-102 ¶¶ 66-68.)

Instead, when Kleinhandler was contacted by law enforcement authorities regarding Frederica's suicide, he misrepresented to them – with no legal or factual basis – that he was authorized to act for Frederica's estate. (A-100-101 ¶¶ 55-58.)

18

He was not appointed by Frederica or any court or any other authority as her executor or personal representative. In fact, he knew that, to the contrary, Frederica had appointed the Theas as her executors pursuant to the form of Last Will and Testament annexed to the Agreement (at A-61, Art. Seventh). As trustee of the Trust, he has authority over Trust assets, but nothing else. He also arranged, without any authorization in fact or law, for the disposition of Frederica's body. (A-109 ¶ 59.) Indeed, the Trust itself makes clear that Frederica's funerary arrangements were to have been made, in the first instance, by her executors, i.e., the Theas, not Kleinhandler; as trustee Kleinhandler was empowered merely to make available Trust funds (if needed) to pay funeral expenses arranged by others. (A-143-144, Art. IV.B.) Kleinhandler did not cause any obituary to be published for Frederica, or cause any other public announcement of her death. (A-102 ¶ 68.)

Kleinhandler's misrepresentations and unauthorized acts have been confirmed, through the limited investigation so far available to the Theas, by the report of law enforcement made upon Frederica's death. (A-183.) Clearly, had Kleinhandler not misrepresented his authority and taken these unauthorized actions, either law enforcement in California or a public administrator in California would have made a search for Frederica's next of kin and located the Theas and informed them of her death. (A-100-101 ¶¶ 55-62.) While below Kleinhandler

argued that this allegation is "speculation," it is not. It is a statutory duty. Cal. Gov't Code § 27491.

As nominated executors, the Theas would have had control of the situation. But that is precisely what Kleinhandler did not want, so he misrepresented his authority, hid the facts from the Theas, usurped control, and proceeded to liquidate and waste their property. Kleinhandler engaged in the foregoing conduct with the intent to hide (and the effect of hiding) Frederica's death from the Theas, and with the intent to hinder (and the effect of hindering) the Theas' ability to obtain Frederica's property. (A-102 ¶¶ 69-70.)

In addition, by his foregoing conduct, Kleinhandler de facto undertook to act as the personal representative for Frederica's estate, which obligated him, inter alia, to inform the Theas of Frederica's death and, given their rights under the Agreement (of which he was admittedly aware), administer her affairs for their benefit. (A-101 ¶¶ 63-65.) Instead, he has kept relevant information from them, tried to sell their property out from under them, and attempted to nullify their rights under the Agreement and the resulting trust in their favor.

On the basis of these allegations, the Theas brought four causes of action: (I) for declaratory judgment generally to the effect that any and all property or assets or accounts of Frederica and/or the Trust are their rightful property, and setting aside any and all transfers, withdrawals, or other disposition of any property,

assets, or accounts after Frederica's death or during her life which were contrary to, in derogation of, or in avoidance of the Agreement (A-103-104 ¶¶ 80-90); (II) for a constructive trust "with respect to the entire contents of the Trust and any distributions therefrom, and with respect to any property or assets or accounts of Frederica withdrawn, transferred or disposed of during her life contrary to, in derogation of, or in avoidance of the Agreement" (A-105-106 ¶¶ 91-99); as part of this count the Theas alleged that transfers to and from the Trust were void <u>ab initio</u> pursuant to EPTL 7-3.1 (A-105 ¶ 97); (III) for an accounting (A-106-107 ¶¶ 100-106); and (IV) breach of fiduciary duty against Kleinhandler personally with respect to his duties under the legally imposed resulting trust (not Frederica's Trust) and as a result of his undertaking <u>de facto</u> to act for Frederica's estate (A-107 ¶¶ 107-112).

The Attorney General submitted an Answer. (A-113.) Defendants-Appellees Kleinhandler and New School moved to dismiss. (A-128, 171.)

## II.    <u>The District Court's Ruling on the Motions to Dismiss</u>

Nearly a half year after those motions were fully briefed, the District Court issued the May Order directing the Clerk to enter judgment in favor of defendants unless the executor or administrator of Frederica's estate joined in the action and sought leave to amend within twenty-one days. (A-215.) The District Court explained that in order for it to issue the declarations the Theas sought, it must

21

reach "two conclusions": "First, the Court must find that the Theas are the proper beneficiaries of Frederica's estate.  Second, the Court must find that the Trust assets are part of Frederica's estate." (A-210-11.)  It then stated: "These two findings encapsulate two related causes of action.  The first [is essentially] an action for specific performance to enforce the Agreement, akin to a breach of contract action.  The second [is] to invalidate the Trust, which is an action to recover estate property."  Id. (citations omitted).  This "two-action" paradigm is contained nowhere in the cases cited or, for that matter, in any other case.

With regard to the "first" cause of action, the District Court held, with no legal support, that "[i]n an action brought by putative beneficiaries to enforce an agreement, before ordering the transfer of assets, a court must first find an estate in breach and compel the executor to enforce the resulting trust." (A-211.)  It concluded that, as a result, "an estate's administrator, or its executor, is a necessary party." (A-212.)  It did so without even acknowledging or discussing the pages of cases cited by the Theas standing for the proposition that the Agreement itself imparts standing to the Theas, as individuals, directly to bring their claims.  Thus the District Court held that it was "unable to adjudicate" any of the Theas' claims in the absence of an estate representative and dismissed the AC, without prejudice, instructing that "[t]he executor or administrator of the estate may seek leave to amend within 21 days." (A-214-15.)

22

### III.  The Theas' Proposed Second Amended Complaint

Despite their disagreement with the May Order, the Theas, who are Frederica's named executors, retained counsel in California (where Frederica died) and initiated the process of admitting Frederica's will to probate and seeking a fiduciary appointment with respect to Frederica's estate.  (A-219 ¶¶ 5-6.)  They filed an expedited petition in California probate court for letters of special administration so that their application could be heard prior to the twenty-one day deadline imposed by the District Court.  (A-220 ¶ 8.)  Despite the New School's opposition to that application (neither Kleinhandler nor the Attorney General opposed), the California court granted the Theas' requested relief, issuing letters of Special Administration to Deborah and Donald on May 28 and May 30, 2014, respectively.  (A-220-21 ¶¶ 10-13.)  Subsequently, the California court also admitted Frederica's will to probate.  (A-244.)  Consequently, the Theas enjoy rights not only under the Agreement, but also as beneficiaries under Frederica's will, and as fiduciaries of her estate.

Three days after Donald's letters issued (and again, within the twenty-one day deadline imposed by the District Court), the Theas made a motion for leave to amend their complaint, submitting for the District Court's approval their PSAC. (A-223.)

23

In the PSAC, the Theas alleged essentially the same facts (with the addition of their appointment as Special Administrators) and essentially the same claims (but now in various different capacities) as in the AC. The PSAC contained the following causes of action: (I) declaratory judgment by the Theas individually, generally to the effect that any and all property or assets or accounts of Frederica and/or the Trust are their rightful property, and setting aside any and all transfers, withdrawals, or other disposition of any property, assets, or accounts after Frederica's death or during her life which were contrary to, in derogation of, or in avoidance of the Agreement (A-234-36 ¶¶ 91-101); (II) the same declaratory judgment, but by the Theas as Special Administrators (A-236-38 ¶¶ 102-112); (III) invalidation of all transfers to the Trust under EPTL 7-3.1, by the Theas as creditors (A-238-39 ¶¶ 113-120); (IV) constructive trust, in all capacities (A-239-40 ¶¶ 121-128); (V) equitable accounting, in all capacities (A-240-41 ¶¶ 129-135); and (VI) breach of fiduciary duty against Kleinhandler personally with respect to his duties under the legally imposed resulting trust (not Frederica's Trust) and as a result of his undertaking de facto to act for Frederica's estate, in all capacities. (A-241-42 ¶¶ 136-141.)

Kleinhandler and New School opposed the Theas motion for leave to amend, arguing that the PSAC would not withstand a motion to dismiss.

24

**IV.    The District Court's Decision on
            the Theas' Motion for Leave to Amend**

On or about August 1, 2014 – despite the Theas having complied precisely

with the directive in the May Order to add the executors or administrators of

Frederica's estate to the lawsuit – the District Court issued the August Order

denying the Thea's motion for leave to amend as futile and directing the Clerk to

enter judgment for defendants-appellees, which occurred on August 4, 2014.  (A-

309-10.)

With respect to Count I (individual declaratory judgment), the District Court

incorporated its holding in the May Order, and again rejected the notion that the

Theas have standing in their individual capacity.  (A-304.)

With respect to Count II (estate declaratory judgment), under CPLR 202 the

District Court decided it ought to apply the shorter of the New York statute of

limitation or that of the state where the cause of action accrued.  (A-305.)  It held

that purely economic claims accrue where a plaintiff resides.  Id.  It concluded that,

in their capacity as Special Administrators of Frederica's estate, which is located in

California, the Theas should both be deemed citizens of California.  Id.  Thus, the

District Court held that the shorter of the applicable New York statute of limitation

and the California statute of limitation would apply.

The District Court also found that claims alleging injury to property or non-

economic harm – e.g., those seeking recovery of Trust property – accrue in the

25

state in which the property is located. (A-305.) It erroneously concluded that because the only asset the Theas specifically identified as being part of the Trust was a piece of real property located in California, any causes of action alleging non-economic harm necessarily accrued in California. (A-306.) In fact, this is not true. The PSAC alleges that substantially all of Frederica's assets were transferred to the Trust while she lived in New York. (A-231 ¶ 57.) That would of necessity include, for example, the $1.1 million she received from Stanley's IRA. (A-26, Art. 4.) The PSAC also says that, upon information and belief, some or all of the proceeds of sale of certain New York property was used to purchase the California residence. (A-231 ¶ 56.) It never alleges that all Trust assets were devoted to that use, or that the California residence is all the Trust still owns. Moreover, in opposition to the motions to dismiss the AC, the Theas submitted several documents indicating that the Trust also holds securities and money worth several hundreds of thousands of dollars in accounts located in New York. (A-176.) The District Court made no mention of this in its August Order. (See A-295.) Under its own analysis the District Court would have had to apply the New York statute of limitations to claims for recovery of property located in New York.

Having erroneously concluded to look to the applicable California statute of limitations, the District Court made yet another error in choosing which California statute of limitation to apply. Specifically, it invoked California Code of Civil

26

Procedure § 366.3, which states that "[i]f a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate . . . an action to enforce the claim to distribution may be commenced within one year after the date of death . . . ." (A-307.) It held that despite the fact that § 366.3 applies, on its face and according to its legislative history, only to claims to distribution from an estate, it nevertheless covers the Theas' claims, on behalf of Frederica's estate, against non-estate entities, for recovery of property and money into the estate. (A-307) ("holding that there is nothing in the language of section 366.3 that limits its application based upon the identity of the party bringing or defending the claim").) No court has ever applied this statute in such a way. Moreover, as the Theas pointed out in their briefing below, a California appellate court has concluded that (even as to claims to which it does apply) § 366.3 irreconcilably conflicts with that state's probate code, which allows a lawyer time for the assertion of a claim against an estate. The District Court apparently thought nothing of this conflict – it is not so much as mentioned in the August Order.

The District Court acknowledged, under California law, that equitable estoppel could apply to § 366.3. However, it said that the Theas did not meet what it held to be their burden to "allege that Kleinhandler, through action or inaction, prevented them from timely bringing suit." (A-308.) It did not cite any law to support the proposition that it was the Theas' burden to plead in avoidance of

27

defendants-appellees' affirmative defense (and in fact, the law is precisely the opposite). Nor did it credit the multiple allegations of the PSAC detailing how Kleinhandler hid the facts from the Theas and misrepresented himself to law enforcement, etc., for the purpose and with the effect of preventing them from asserting their rights. Instead, the District Court stated that the PSAC did not "specify when the Theas learned of [Frederica's] death and thus knew they potentially had a claim;" for that reason the District Court held that it was "unable to conclude that Kleinhandler should be estopped from invoking the statute of limitations . . . ." (A-308.) Of course, here again the Theas bore no burden to make such allegations. But even more egregiously, the District Court effectively acknowledged that, on the face of the PSAC, there was a question of fact as to whether estoppel should apply. In manifest error, it nevertheless refused to permit the Theas to amend.

With respect to claims III-VI, the District Court stated only that they all derive from the Agreement and "are dependent upon a finding that Trust assets are rightfully part of the estate." (A-309.) Since it found that "underlying claim . . . untimely," it deemed that the remaining claims would not survive a motion to dismiss, without any discussion or analysis of any of those four causes of action. Id. This not only repeated the statute of limitations errors, but also failed to recognize that all of those causes of action were also brought by the Theas in their

individual or creditor capacities, none of which required a finding that Trust assets belong to the estate.

**V.      The Theas' Appeal**

On or about August 27, 2014, the Theas timely filed the instant appeal from the August Order; the August 4, 2014 Judgment; and all prior orders and judgments subsumed therein (including, but not limited to, the May Order).  (A-311.)

**ARGUMENT**

**I.      This Court Must Review the District Court's Order De Novo**

Appellate Courts "review de novo a district court's dismissal of a complaint for failure to state a claim under [Fed. R. Civ. P.] 12(b)(6), accepting all factual allegations as true."  Starr v. Sony BMG Music Entm't, 592 F.2d 314, 321 (2d Cir. 2010).  Where a District Court denies a motion for leave to amend on the basis that such amendment would be legally futile, i.e., where it could not withstand a motion to dismiss, that decision, too, is reviewed de novo.  Gorman v. Consol. Edison Corp., 488 F.3d 586, 592 (2d Cir. 2007).  The allegations of the AC and the PSAC must be accepted as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**II.      The Theas Have Individual Standing to Enforce the Agreement**

New York recognizes the validity and enforceability of written contracts to make a will.  EPTL 13-2.1(a).  Multiple times, the New York Court of Appeals has considered the type of actions taken by Frederica and Kleinhandler to avoid such a

29

contract. Each time, it has condemned them, especially when (as here) they are taken by the survivor who has inherited from the other predeceased party and so obtained the benefit of the contract. And it has expressly recognized the validity of direct action to enforce the decedent's promise, without an estate representative being a party to the action. For example, in <u>Schwartz v. Horn</u>, 31 N.Y.2d 275 (1972), a husband and wife contracted during life to make mutual wills leaving their home to each other, and then to their son and daughter in equal shares. When the husband died his surviving spouse obtained the benefit of the agreement by inheriting from him. However, she then made an <u>inter vivos</u> gift of the home to her grandson (her son's son). The grandson argued that the agreement to make a particular testamentary disposition did not preclude an inconsistent gift during life. The Court of Appeals was appropriately harsh: "to permit the one who survives to gain the benefits of the [first to die's] will and then to flout its provisions in violation of the promise made to the other," the court said, "would be a mockery of justice." <u>Id.</u> at 280 (quoting <u>Tutunjian v. Vetzigian</u>, 299 N.Y. 315, 319 (1949)).

Notably, the daughter commenced her action <u>after</u> the mother had died. She named as defendants only her brother and the grandson, both in their individual capacity. No estate representative was named. Nevertheless, the Court of Appeals held that the decedent "could not, after her spouse's death, make a different testamentary disposition or a gift to defeat the purpose of the agreement," and that

30

"if the plaintiff proves the allegations of her complaint . . . she is entitled to prevail." Id. at 279, 281. Schwartz is materially indistinguishable from this case. Here, Frederica inherited from Stanley and so obtained the benefit of the Agreement. Then she tried to avoid it by lifetime gift of all her assets to the Trust. The Theas, beneficiaries of the Agreement, sued the recipients of that gift. If their allegations are proven, they are also "entitled to prevail."

To the same effect is Rastetter v. Hoenninger, 214 N.Y. 66, 73-75 (1914) (husband and wife contracted to leave entire estate to each other and then to son and daughter in equal shares; husband inherited from wife, but then used inherited money to buy property, which he titled in daughter's name; after father died, son's children sued daughter for one-half of that property; the Court of Appeals opined that "Upon the death of the wife, the husband undoubtedly became the trustee of her personal estate for the remaindermen," and that, if it be shown that the property was purchased with wife's money or to avoid the contract to make wills, son's children (who should have received one-half) could enforce that trust against the daughter) (emphasis added). So too here – when Frederica inherited from Stanley, her entire estate came under a trust for the benefit of the Theas as remaindermen; Frederica's transfer of her entire estate to the Trust was in avoidance of the Agreement; the Theas have a right to enforce the trust directly against the recipients.

So too, <u>Olsen v. Olsen,</u> 189 Misc. 1046, 1048-51 (Sup. Ct., Queens County 1947) ( husband and wife contracted to leave entire estate to each other and then to four children in equal shares; husband inherited from wife, then executed a new will bequeathing stated amounts to his three sons and the balance to new wife; in derogation of contract with prior wife, he left nothing to daughter; daughter sued new wife; "It is the contention of the plaintiff that the mutual wills above described constitutes an <u>agreement which may be enforced by the plaintiff as a beneficiary</u> . . . <u>for the breach of which a beneficiary thereunder has a cause of action</u> such as has here been asserted by the plaintiff.  I can reach no other conclusion," quoting and adopting prior cases to the effect that:  "<u>This is a contract</u>. . . . It is too late afterwards for the survivor to change his mind . . . If the other then refuses, he is guilty of fraud, <u>can never unbind himself, and becomes a trustee of course</u>. . . . By engaging to do something that is in his power, <u>he is made a trustee for the performance</u>, and he transmits that trust <u>to those that claim under him</u>.") (emphasis added; citations omitted).

Thus, the law is exceedingly clear that, where (as here) a party to a contract to make wills receives the benefit of the contract by inheriting from the first to die: (1) the surviving party holds that property <u>in trust for</u> the ultimate beneficiaries under the contract, (2) the trust extends beyond the surviving contracting party and is also <u>equally</u> impressed upon anyone to whom the survivor transferred trust

property, either before or at death, and (3) the contract and resulting trust may be enforced <u>directly</u> against them by the ultimate beneficiaries under the contract. <u>See also</u> <u>In re Carvel Found.</u>, 8 Misc. 3d 1025(A) (Sur. Ct., Westchester County 2002) (finding that the parties to whom property was transferred by survivor of contract to make a will were holding property in resulting trust for the ultimate beneficiary of the contract, and ordering specific performance); <u>Tutunjian</u>, 299 N.Y. at 320-21 (contract to make wills held enforceable in equity by the ultimate contract beneficiaries, directly against those who actually received the property as beneficiaries under the decedent's later, inconsistent will, and "[t]hose beneficiaries are to be deemed to hold [the decedent's property] as a resulting trust in favor of [the ultimate contract beneficiaries]").

Nevertheless, the District Court invented and then insisted upon a cumbersome and completely illogical "two-action" procedure, premised on the notion that the ultimate beneficiaries of a contract to make wills cannot enforce it directly, such that "an estate's administrator, or its executor, is a necessary party." (A-300-301.) None of the cases cited by the District Court for this proposition contains such a statement. Indeed, several say the opposite, including the New York Court of Appeals in <u>Tutunjian</u>, <u>supra</u>, and again in <u>Kates v. Yeshiva University</u>, 13 N.Y.2d 805 (1963): "It has long been recognized in law that persons competent to contract may validly agree to dispose of their estate in a particular

33

way. . . The agreement if breached may, by way of an action for specific performance, <u>be enforced against any party</u>." <u>Id.</u> 810-11 (emphasis added).

The District Court appears to have been confused by several cases stating that the trust resulting from a contract to make wills can be specifically enforced against the decedent's executors. Of course it can – it may be enforced "against any party" into whose hands comes property which should have gone to the ultimate contract beneficiary. In those particular cases, the breaching party had not made an <u>inter vivos</u> gift, but had made a new will in derogation of their contract. The executors of the <u>new</u> will (to the extent property had not yet been distributed to the new will's beneficiaries) or the new will's beneficiaries (to the extent it had), must turn the property over to the ultimate contract beneficiaries. <u>Tutunjian</u>, 299 N.Y. at 319 ("If, in violation of the agreement so made, one of the parties to the joint will executes a new one, the latter is recognized as his last testament, but the courts will require its executor and beneficiaries 'to perform the contract' of the decedent."); <u>Glass v. Battista</u>, 43 N.Y.2d 620, 625 (1978) ("Since the husband breached the agreement by executing a will other than that agreed upon, the Appellate Division properly compelled the husband's executors to fulfill the agreed upon testamentary disposition."); <u>Rich v. Mottek</u>, 11 N.Y.2d 90, 95 (1962) ("In other words, if the survivor of the two testators breaches the contract by

34

executing a will other than that agreed upon, the courts will compel his executors 'to perform the contract'.")

Thus, in those cases, the estate representatives were parties not because it was necessary in order for the plaintiff to have standing, but because the estate was in possession of the property that the plaintiff was claiming as its own. Accordingly, the estate was (of course) a defendant. In this case, Frederica did not make a new will but instead (with Kleinhandler) stripped her estate of all assets by <u>inter vivos</u> transfer. So there was no need for the Theas to name her estate. The Theas had every right to assert their claims directly against the parties holding their property.

Indeed, the District Court's procedure makes no sense. The PSAC alleges – and nobody disputes – that substantially all Frederica's assets are in the Trust and none in her estate. Thus, there is no point in involving an empty estate where doing so would create an extra and unnecessary step. Moreover, in this case, where the Theas are themselves Frederica's executors, the District Court seems to be saying that the Theas were required to sue themselves to compel themselves to sue the defendants . . . which they had already done.

The District Court made the same error when it held in its May Order that the Theas could not establish a breach of fiduciary duty claim against Kleinhandler because it was "unable to determine that Kleinhandler is the representative of

Frederica's estate," and thus, whether he "breached his fiduciary duty toward either the estate or the Theas as its putative beneficiaries."  (A-214.)  This again erroneously presumes that rights and duties do not arise independently from the Agreement and its resulting trust.  In fact, the above cases clearly establish that Frederica held all property subject to a resulting trust for the Theas' benefit, and that when Kleinhandler became co-trustee of the Trust with Frederica – and certainly when he became sole trustee upon her death – that same trust was impressed upon him as well. And he knew it, because he was in possession of complete knowledge of the Agreement, the Theas, their beneficiary status under it, Frederica's will, and her avoidance of both it and the Agreement.  Kleinhandler thus accepted fiduciary duties to, and became de facto fiduciary to, the Theas.  See Matter of Donner, 82 N.Y.2d 574, 584 (1993) (due to his relationship with the decedent, a financial advisor who was also named executor of decedent's will was charged with "a duty to preserve the assets of the estate from the moment of death to insure that they were protected for the persons or entities eventually entitled to receive them") (emphasis added); see also In re Estate of Runals, 68 Misc. 2d 967, 973 (Sur. Ct. Cattaraugus County 1972) (de facto fiduciary stands "in a fiduciary relation to all parties interested in the estate, specifically including creditors").

**III.    No Statute of Limitation Bars the Estate's Claims[3]**

The District Court misinterpreted New York's borrowing statute, California statutes of limitations, and the parties' respective pleading burdens, heaping error upon error.

    A.    EPTL 7-3.1 Is Subject Only To a New York Statute Of Limitations

Frederica lived in New York at the time of the creation of the Trust; her co-trustee Kleinhandler also lived in New York at that time and continues to live in New York through to the present; the Trust (since its inception and at all times thereafter), is governed by New York law; Frederica transferred substantially all of her property into the Trust; Frederica lived in New York at that time; those transfers all occurred in New York; and those transfers consisted of property located in New York.  Consequently, the District Court acknowledged that claims directed against the Trust are governed by New York law.

EPTL 7-3.1 provides that "[a] disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator."  It is settled that the Theas have claims as creditors.  Matter of Halbert, 28 Misc.3d 1233(A) (Sur. Ct., Sullivan County 2010) (finding that party had "sufficiently alleged facts to support a claim as creditor under the alleged contract not to revoke the purported 1964 mutual reciprocal Will") (citing Tutunjian v. Vetzigian, 299 NY 315, 319

---

[3] The District Court made no statute of limitations analysis of the Theas individual claims.

37

(1949); In re Carvel Foundation, 8 Misc.3d 1025(A) (Sur. Ct., Westchester County 2002), aff'd 2 A.D.3d 847 (2d Dept 2003) (granting demand of one of ultimate beneficiaries under contract to make wills that estate assets be distributed to it as domestic creditor).  Claims pursuant to this statute are governed by the six-year statute of limitations in New York's CPLR 213(1).  See State v. Cetero, 233 A.D.2d 580 (3d Dep't 1996).

The Theas pointed out below that "New York's statute of limitations applies" to all claims brought pursuant to New York statute.  Brown v. Australian Airlines, 97-cv-3798, 1997 U.S. Dist. LEXIS 21313, at *21-22, 24-25 (E.D.N.Y. Dec. 9, 1997) (there is "no authority to support the proposition that the borrowing statute applies to New York statutory causes of action," and it has "never . . . been applied to New York's own statutes").  The Brown court went on, in the alternative, to consider the law of the non-resident's forum based on the "place of injury," but applied New York law nonetheless because the law of the non-resident's forum did not provide a cause of action identical to the New York statutory cause of action at issue in that case.  Therefore, the New York statutory cause of action could not have accrued in the non-resident's forum and New York's borrowing statute did not apply.

Had the District Court performed a similar (or any) analysis here, the same result should have obtained.  We have not located any California cause of action

38

voiding transfers into a self-settled trust, so New York's statute of limitations applies.[4]  Donald is a resident of Massachusetts, so no California statute of limitations (including § 366.3) applies to any claim brought by him.[5]

      B.     The District Court Misapplied the
                  <u>Borrowing Statute to the Common Law Claims</u>

      With respect to those claims which it did analyze, the District Court held that New York law applied to them, including New York's borrowing statute, CPLR 202, which says that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."  In other words, where a non-New York resident brings a cause of action that accrues outside of New York,

---

[4] The most nearly analogous California statute appears to be Cal. Civ. Code § 15304(a).  But this statute is different in that it invalidates the trust's spendthrift provision, not the validity of the trust, nor does it void the initial transfer into the trust.  In any event, this statute has no specific statute of limitations, and is therefore subject only to California's four-year catch-all statute.  Cal. Civ. Proc. § 343.

[5] Nor does Massachusetts appear to have any statute voiding transfers into self-settled trusts.  The most nearly analogous claim appears to be in equity to invalidate the spendthrift provision of a trust in certain circumstances, but does not invalidate the trust nor void transfers into it.  <u>State Street Bank & Trust Co. v. Reiser</u>, 7 Mass. App. Ct. 633, 638 (1979); <u>Aylward v. Landry</u>, 226 B.R. 507, 510 (D. Mass. Bankr. 1998).  In any event, this claim appears to have no specific statute of limitations.  The shortest Massachusetts catch-all statute of limitations is three years.  Mass Gen. L. ch. 260 § 2A.

the court will "borrow" the statute of limitations (as well as its extensions and tolls) from the state of accrual, to the extent it is shorter than the analogous New York statute of limitations.  The District Court made at least two further errors in determining place of accrual, resulting in the application of an incorrect, shorter statute of limitations.

First, the District Court wrongly held that a California statute of limitation applied to all the Theas' claims seeking recovery of property, be it real property in California or tangible personal property in New York.  The undisputed case law holds that causes of action seeking the return of personal property – such as those sounding in replevin, or conversion – accrue where the at-issue property is located. See Matter of McLaughlin, 78 A.D.3d 1304, 1306 (3d Dep't 2010) ("the law that generally applies is the law of the state where the tangible personal property is located"); Matter of Thomas, 28 Misc. 3d 300, 303 (Broome County 2010) ("The law of the state where tangible personal property is physically located should govern a claim for turnover of that property.").  The District Court credited this case law, but then held that because the PSAC alleged that the Trust "sold its New York properties and purchased property in California," and that "[n]o other tangible property is alleged to be part of Frederica's estate," that a one-year California statute of limitations would necessarily apply to a claim for recovery of any Trust property.  (A-306 (citations omitted).)

40

The District Court's holding is both factually and legally incorrect.  The PSAC nowhere alleges that <u>all</u> the Trust's personal property was liquidated to buy the California residence.  To the contrary, it alleges that the Trust (a New York entity) had received over a million dollars from Stanley's retirement account.  (A-26, Art. 4)  In addition, in opposition to the motions to dismiss, the Theas had also submitted documentary proof in the form of bank and brokerage statements showing that the Trust – which is governed by New York law and has, as its sole trustee, a citizen of New York – holds securities and money in New York.  (A-176.)  These filings were incorporated by reference into the papers on the motion for leave to amend.  (A-219.)  But the District Court either ignored or overlooked them.  Matters of public record, "such as court filings," may also be considered on a motion to dismiss.  <u>Joyce v. Thompson Wigdor & Gilly</u>, 06-cv-15315, 2008 U.S. Dist. LEXIS 43210, at *8 (S.D.N.Y. June 3, 2008); <u>Schuh v. Druckman & Sinel, L.L.P.</u>, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009); <u>see also</u> <u>Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004) ("In ruling on the sufficiency of the complaint . . . we may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").  But this is also academic for, as will be discussed at length in section III.C.3, <u>infra</u>, the Theas did not have to plead where <u>all</u> Trust property is located (even if they could know that) because they are not required to plead in avoidance

of an affirmative defense. They are only required to plead facts consistent with a claim that is not time-barred, and they are entitled to the benefit of all reasonable inferences, which they did. Thus, it should be of no moment that, as the District Court observed, the Trust "is not alleged to have had control over any property in New York" (A-306), because there is likewise no allegation that the Trust <u>only</u> holds property located in California. That was merely the District Court's erroneous factual conclusion.

Had the District Court properly considered the fact that the Trust held New York property (or at least, by the allegations of the PSAC, could have held New York property), it would have applied the New York statute of limitations to causes of action seeking return of such property. The applicable period is three years. CPLR 214(3); <u>Feld v. Feld</u>, 279 A.D.2d 393, 394 (1st Dep't 2001) ("Replevin and conversion claims are governed by the three-year Statute of Limitations of CPLR 214(3)").

<u>Second</u>, the District Court's erroneous holding that the Theas had standing to bring claims only in their capacity as Special Administrators of Frederica's estate (and not as individual beneficiaries of the Agreement) warped its analysis of the appropriate statute of limitations to be applied to the Theas' purely economic claims, <u>e.g.</u>, breach of fiduciary duty. Under New York law, claims "that allege only economic injury . . . accrue[] in the state where the plaintiff resides." <u>Becnel</u>

v. Deutsche Bank, AG, 507 F. App'x 71, 72 (2d Cir. 2013); see Dziennik v. Sealift, Inc., 06-cv-5305, 2013 U.S. Dist. LEXIS 143407 (E.D.N.Y. Sept. 30, 2013) (same). The District Court did not consider that the Theas, individually, also asserted claims for breach of fiduciary duty. The Massachusetts and California statutes of limitation for breach of fiduciary duty are three and four years, respectively. Mass. Gen. Laws ch. 260 § 2A; Doe v. Harbor Schs., Inc., 446 Mass. 245, 254 (2006). Cal. Civ. Proc. § 348; Thomas v. Canyon, 2011 Cal. App. Unpub. LEXIS 5471, at *19-21 (1st Dist. July 22, 2011).

Both of these errors had a material and prejudicial effect on the Theas. Indeed, had the District Court applied any of the statutes of limitation discussed so far – all of which are longer than eighteen months – rather than the one-year California statute of limitations, the Theas' claims would not be time barred. This is because none of the Theas' claims could have accrued until Frederica's death on February 4, 2012, and the Theas brought the action below no later than July 15, 2013. (A-12.)

The reason the Theas claims could not have accrued until Frederica's death is because the Trust into which she siphoned the entire contents of her estate was freely revocable during her lifetime. That is, at any time until her death, Frederica could have decided to comply with the Agreement by transferring her assets out of the Trust and back into her estate, for the benefit of the Theas. It was only once

43

she died – the point of no return – that it could be determined whether or not she had abided by, or breached, the Agreement and the resulting trust imposed by law on all of her property for the Theas' benefit.  Rubin v. Irving Trust Co., 305 N.Y. 288, 293 (1953) ("The nature of the contract [to make a will] is such that actions for its enforcement are instituted after the death of the promisor."); Matter of Halbert, 28 Misc. 3d 1233(A) ("[a]n agreement to make a Will is enforceable only after the death of the obligor"); Allen v. Payson, 170 Misc. 759, 760-62 (Queens County 1939) ("periods of limitation . . . must be computed from the time of the accruing of the right to relief by action" and "[n]o right of action accrue[s] to plaintiff during the lifetime of [the survivor].  Until her death she might have made or remade a will complying with the terms of the alleged agreement.").  Thus, had the District Court properly applied the borrowing statute, any statute of limitation longer than eighteen months would have been met.

   C.    Even if California Law
         Applies, § 366.3, Specifically, Does Not

The District Court's decision to apply California statutes of limitation across the board was erroneous.  Equally erroneous was the specific statute it ultimately selected.  To all of the Theas' claims (or, at least those it analyzed), it applied California Code of Civil Procedure § 366.3(a), which states that: "[i]f a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate . . . an action to enforce the claim to distribution may be commenced

44

within one year after the date of death . . . ."  The District Court's reliance on §

366.3 to justify dismissal of the Theas' lawsuit was erroneous for several reasons.

> 1.  On its Face, §366.3 Does not Apply to
>     Claims by the Estate for Recovery Into the Estate

Section 366.3 states that a person who has a claim "to distribution <u>from</u> an

estate," which claim is based on an agreement with a decedent, may bring an

"action to enforce <u>the claim to distribution</u>" within one year after the decedent's

death.  <u>Id.</u> (emphasis added).  Statutes of limitations apply to particular claims (a

contract claim, a fraud claim, etc.)  By its plain terms, this statute also applies only

to particular claims:  those which are "to enforce the claim to distribution" <u>against</u>

an estate.  The California courts and legislative history confirm as much.  <u>See</u>

<u>Allen v. Stoddard</u>, 212 Cal. App. 4th 807, 810 (4th Dist. 2013) ("§ 366.3 "plainly

appl[ies] to claims against estates"); <u>Maxwell-Jolly v. Martin</u>, 198 Cal. App. 4th

347, 355 (1st Dist. 2011) (§ 366 is "narrow in scope" and was enacted to "clarify

ambiguities and discrepancies in existing law . . . [of] statute of limitations

<u>applicable to a claim against a decedent's estate</u>") (emphasis added); <u>McMackin v.</u>

<u>Ehrheart</u>, 194 Cal. App. 4th 128, 136 (2d Dist. 2011) (§ 366.3 "establishes the

statute of limitations to file a claim for distribution of an estate"); <u>Stewart v.</u>

<u>Seward</u>, 148 Cal. App. 4th 1513 (2d Dist. 2007) (applying § 366.3 to a claim made

against decedent's estate); Judiciary Comm. Analysis of Assem. Bill No. 1491

(1999-200 Reg. Sess.) (part of the purpose of § 366.3 was to ensure that the "same

statute of limitations" applies "for all claims <u>against</u> the estate"; proposed § 366.3 meant to change existing law, which "specifies the statute of limitations applicable to a claim <u>against a decedent's estate</u> based upon a contract to make . . . a will . . . ." because "[u]sing the same statute of limitations for all claims <u>against the estate</u> would . . . be more convenient <u>for the fiduciaries administering estates</u>") (emphasis added).

In its May Order, the District Court acknowledged that the AC made no claim against Frederica's estate, which is not even a defendant.  In fact, for the Theas to make a claim against the estate in this action would require them to sue themselves, since they now act for the estate as Special Administrators.  Indeed, the District Court instructed that "the proper avenue for the Theas to adjudicate th[ese] rights is . . . through the probate Courts of California."  (A-210-11.)  And, despite their disagreement with this ruling, that is precisely what the Theas did: they petitioned for probate of Frederica's will in Monterey County (where she died), obtained letters of Special Administration to act on behalf of her estate, and then, on behalf of her estate, allowed what the District Court described as the "first" cause of action.

Thus, the AC and PSAC assert claims to invalidate the Trust and/or transfers into it and recover estate property, <u>i.e.</u>, claims <u>in favor</u> of Frederica's estate, as opposed to <u>against</u> it.  In other words, it is the exact opposite of the type of claim to

46

which § 366.3 would apply. And indeed, the Theas are not aware of any California case which applies § 366.3 to bar an action <u>by</u> an estate. Neither defendants-appellees nor the District Court cited any, either.

The District Court apparently based its decision on its observation that "there is nothing in the language of Section 366.3 that limits its application based upon <u>the identity of the party bringing or defending the claim</u>." (A-307 (emphasis added).) This was manifest error. The words of the statute unequivocally state that the one year limitations period applies to <u>certain types of claims</u>: "an action to enforce the claim to distribution" from an estate. But Frederica's estate has no claim to distribution from itself, and for the District Court to apply this statute in such a way is not only unprecedented but also a <u>non-sequitur</u>. The District Court did cite some legislative history in an attempt to support its conclusion, but all that history says is that the statute would bring "consistency to the statutes of limitation for enforcement of claims <u>against</u> a decedent." (A-308 (emphasis added).) In other words, if anything, it supports the Theas' argument that § 366.3 does not apply in this situation.

Had the District Court applied the California statutes of limitations applicable to the claims actually asserted – all of which exceed eighteen months – the Theas claims would not have been deemed time barred.

For example, the PSAC's declaratory judgment claims sound in quiet title (to the extent they seek to recover California real property), replevin or conversion (to the extent they seek to recover personal property), and unjust enrichment (to the extent the Theas seek solely economic damages).  The shortest potentially-applicable statute of limitations in California is two years.  Cal. Civ. Proc. § 318; Martin v. Van Bergen, 209 Cal. App. 4th 84, 91-92 (2d Dist. 2012) (five year statute of limitations for action to recover real property or possession thereof); Cal. Civ. Proc. § 338(c)(1) (three-year statute of limitations applying to "[a]n action for taking, detaining, or injuring any goods or chattels, including for specific recovery of personal property"); Cal. Civ. Proc. § 339(1) (two-year statute of limitations for unjust enrichment).

The PSAC's constructive trust and accounting claims would be subject to a four-year statute of limitations.  Cal Civ. Proc. § 343; Nelson v. Nevel, 154 Cal. App. 3d 132 (2d Dist. 1984) (equitable relief "in the form of a constructive trust" carries four-year statute of limitations).

Finally, the PSAC's breach of fiduciary duty claims would be subject to a four-year statute of limitation.  Cal. Civ. Proc. § 343; Thomas v. Canyon, 2011 Cal. App. Unpub. LEXIS 5471, at *19-21 (1st Dist. July 22, 2011).

In short, the District Court's failure to apply the proper California statute of limitations (to the extent California law even applies) led directly to its erroneous decision to deny the Theas' right to amend.

2.      The District Court Ignored California Case Law Questioning the Application of §366.3 in the Very Type of Situation Presented Here

The District Court, sitting in New York, saw fit to apply a California statute of limitation that even the California appellate courts have expressed serious reservations about applying because it "irreconcilably conflicts" with that state's probate code. Allen v. Stoddard, 212 Cal. App. 4th 807, 808 (4th Dist. 2013). Specifically, Cal. Prob. Code § 9531 states that no suit on a cause of action against a decedent may be brought unless a claim is first filed with the estate's personal representative, and the personal representative rejects it. Cal. Prob. Code § 9353(a) states that a rejected claimant has ninety days after the claim is rejected to file suit "[r]egardless of whether the statute of limitations otherwise applicable to a claim will expire before or after" such time. Furthermore, any period of time during which there is no personal representative "shall be excluded from the period determined under subdivision (a)." Id. Thus, under the California Probate Code, the statute of limitations on the Theas' claims has not even begun to run.

The Allen court recognized that the statutory conflict between § 366.3 and the probate code raised the "obvious problem" that one could try to "run out the

49

clock on § 366.3" to prevent claims from being brought. Id. at 817-18. The PSAC alleges numerous facts tending to show that this is precisely what Kleinhandler was intending to do, including that Kleinhandler knew that he held the Trust assets in trust for the Theas, yet intentionally failed to notify the Theas of Frederica's death and took steps to ensure they would never learn of it, preventing them from timely seeking to recover what was rightfully theirs. Effectively, then, the District Court has allowed Kleinhandler to "run out the clock" on the Theas and use § 366.3 as a shield to liability, exactly as the California indicated should not happen.

The Allen court could not resolve the conflicts between § 366.3 and the probate code and was unable to "articulate a unified theory of the relationship" between the two. Id. at 817-18. And no post-Allen California court attempts to resolve this issue. For a federal court sitting in New York to ignore this problem completely – the Theas raised it below but it is nowhere mentioned in the August Order – and interpret a California statute in a way the California courts have opined is untenable, was plain error.

> 3. The District Court Placed an Impermissible Burden on the Theas With Respect to Equitable Estoppel

The District Court correctly acknowledged that, even if § 366.3 applied to the Theas' claims (which it does not), the statute of limitations would be subject to equitable estoppel. (A-308.) Then, it incorrectly held that it was the Theas'

burden to plead this.  Actually, the law is precisely the opposite, and the District

Court erred.

Specifically, the District Court held that in order for the Theas to invoke

equitable estoppel, they would "need to allege that Kleinhandler, through action or

inaction, prevented them from timely bringing suit."  (A-308.)  Not so.

Defendants-Appellees' contention that the Theas' claims are barred by statutes of

limitation are affirmative defenses, which a "plaintiff has no obligation to

anticipate or refute."  Rosen v. Brookhaven Capital Mgmt., Co., 194 F. Supp. 2d

224, 227 (S.D.N.Y. 2002); see Chillemi v. Town of Southampton, 943 F. Supp. 2d

365, 377-78 (E.D.N.Y. 2013) (same).  This is particularly true in instances where

statutes of limitations are raised.  Harris v. City of N.Y., 186 F.3d 243, 251 (2d Cir.

1999) ("[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of

limitations grounds requires only allegations consistent with a claim that would not

be time-barred.") (emphasis added); Absolute Activist Master Value Fund, Ltd. v.

Ficeto, 09-cv-8862, 2013 WL 1286170, at *15 (S.D.N.Y. Mar. 28, 2013) ("As the

statute of limitations is an affirmative defense, dismissing claims on statute of

limitations grounds at the complaint stage is only appropriate if the complaint

clearly shows that the claim is out of time.") (internal quotations omitted).

Here, the Theas allegations were eminently consistent with equitable

estoppel.  The PSAC alleges, among other things, that Kleinhandler hid the fact of

Frederica's death from the Theas, held himself out to law enforcement as the representative of her estate, took control over the disposition of her body, and failed to publicize her death. He also decided not to probate or administer Frederica's estate, even though he held himself out to be estate representative. Moreover, Kleinhandler was required by Cal. Prob. Code § 16061.7 to notify the Theas upon Frederica's death of the terms of the Trust and their right to make a claim against it, since they are heirs of the deceased settlor of a revocable trust (as defined in Cal. Prob. Code §§ 44 and 6402).[6] Yet, despite all of this, he failed to notify the Theas of Frederica's death, preventing them from recovering what was rightfully theirs. He did this despite knowing of the Theas and their status as beneficiaries under the Agreement. Indeed, due to his conduct and omissions, the Theas did not even learn of Frederica's death until after the one-year period prescribed in § 366.3 expired.

His "negligence or silence in the face of a duty to speak" is alone sufficient to estop assertion of the statute of limitations. Lix v. Edwards, 82 Cal. App. 3d 573, 580 (2d Dist. 1978). Under the law, these allegations are more than enough to survive a Rule 12(b)(6) motion on statute of limitations grounds.

The District Court held the Theas to an impermissibly high standard, disregarding their estoppel argument because the PSAC "does not specify when the

---

[6] Pursuant to Cal. Prob. Code § 16061.9(b), Kleinhandler is also liable "for all damages caused to the heir by the failure" of notification.

52

Theas learned of Frederica's death and thus knew they potentially had a claim," with the result that the court was "unable to conclude that Kleinhandler should be estopped from invoking the statute of limitations in this instance." (A-308 (emphasis added).) As discussed above, this is a complete distortion of the law. The Theas had no obligation to "specify" anything: all they were required to do was allege facts consistent with a claim that is not time barred, and that they did. The burden to establish that the claims are time-barred rests with the defendants. It is also a complete distortion of the facts. Nowhere in the AC or PSAC do the Theas allege that they learned of Frederica's death within the year, and in fact, that is not the case.[7]

Finally, District Court's acknowledgment that it was "unable to conclude" from the face of the PSAC whether estoppel applies, only serves to reinforce that the Theas have met their burden by making "allegations consistent with a claim that would not be time-barred." Harris, 186 F.3d at 251. Case law further provides that equitable estoppel cannot be resolved on a motion to dismiss because it is for the "finder of fact [to] determine." McMaclan v. Ehrheart, 194 Cal. App. 4th 128,

---

[7] While the Theas did not specify in the PSAC when they learned of Frederica's death, they did disclose this fact to Kleinhandler in response to interrogatories, which are not part of the record. The date they provided was May, 2013, which was more than one year subsequent to Frederica's passing. Defendants are aware of this fact, which likely explains why they never raised this argument – it was the District Court's own creation.

142 (2d Dist. 2011). Thus, the District Court's legally unsupportable summary rejection of the Theas' equitable estoppel argument, especially where it found that it was "unable to conclude" whether estoppel applied because it was <u>missing</u> a fact, was clear error.

## **CONCLUSION**

For these reasons, plaintiffs-appellants Donald M. Thea and Deborah L. Thea respectfully request that this Court reverse in its entirety the August 1, 2014 Memorandum and Order of Judge P. Kevin Castel (and all prior and subsequent orders and judgments subsumed therein); that it determine and adjudge that the Theas may bring claims in their individual capacity; that it be determined and adjudged that (i) none of the claims asserted by the Theas in any capacity are barred by any applicable statues of limitations, and/or (ii) if California Code of Civil Procedure § 366.3 applies to any claim, a determination as to whether defendants-appellees are estopped to assert it must await trial below; and that it remand this action for further proceedings before the District Court.

Dated:       October 28, 2014
             New York, NY


                              /S/ Zachary W. Silverman, Esq.
                              Anthony J. Viola
                              Zachary W. Silverman
                              EDWARDS WILDMAN PALMER LLP
                              750 Lexington Avenue
                              New York, NY 10022
                              212.308.4411
                              Attorneys for Plaintiffs-Appellants

55

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because it has

been prepared in a proportionally spaced typeface using Microsoft Word in Times

New Roman, fourteen point font.  This brief complies with the length requirement

of Fed. R. App. P. 32(a)(7) because it is 13,399 words.


/S/ Zachary W. Silverman, Esq.
Zachary W. Silverman
Attorney for Plaintiffs-Appellants
October 28, 2014

56

Special Appendix

i

# Table of Contents
## (Special Appendix)

**Page**

Memorandum and Order of Honorable P. Kevin Castel,
    Dated May 12, 2014..................................................................SPA-1

Memorandum and Order of Honorable P. Kevin Castel,
    Dated August 1, 2014.............................................................SPA-11

Judgment, Dated August 4, 2014 ................................................SPA-26

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DONALD M. THEA and DEBORAH L. THEA,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-13-14

                        Plaintiffs,                          13 Civ. 4895 (PKC)

        -against-                                            MEMORANDUM
                                                             AND ORDER

NEIL C. KLEINHANDLER, individually and as
trustee of the FREDERICA FISHER THEA
REVOCABLE TRUST, NEW SCHOOL
UNIVERSITY, and ERIC T. SCHNEIDERMAN
as Attorney General of the State of New York,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Donald Thea and Deborah Thea (the "Theas") bring this action against

defendants Neil Kleinhandler, the Frederica Fisher Thea Revocable Trust, the New School

University (the "New School"), and Eric Schneiderman, as Attorney General of the State of New

York. The Theas request a declaration as to their rights to property allegedly belonging to the

estate of Frederica Fisher Thea, their stepmother, as well as other relief.

        Kleinhandler and the New School now move to dismiss all claims for failure to

state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket # 32, 35.) The Theas ask for

leave to further amend in the event the Court dismisses the Amended Complaint. The Court

concludes that, because a representative of the estate is not a party to the action, it is unable to

adjudicate the Theas' claims. For reasons further explained, Kleinhandler and the New School's

motions to dismiss are granted. The Theas' claims are dismissed without prejudice.

SPA-2

BACKGROUND

The following facts are taken from the Amended Complaint (the "AC"), documents incorporated by reference in the AC, and matters of which judicial notice may appropriately be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).  All facts are assumed to be true for the purpose of deciding defendants' motion to dismiss.  All reasonable inferences are drawn in favor of the plaintiffs as non-movants.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam).

In or about 1985, Stanley Thea ("Stanley") married his third wife, Frederica Fisher Thea ("Frederica").  (Am. Compl. ("AC") ¶ 11, Docket # 12.)  On April 13, 1995, Stanley and Frederica executed an agreement under which they agreed to execute mutually beneficial wills (the "Agreement").  (See id. ¶¶ 12, 16, 18.)  The Agreement was subsequently modified on January 12, 1996 to reflect changes made to Stanley's Last Will and Testament.  (Id. ¶ 13.)  Under the terms of the Agreement, Stanley was to execute a will that bequeathed the majority of his estate to Frederica.  (AC Ex. 1, at 3–5.)  In the event that Frederica were to predecease Stanley, the Theas, his children by his first marriage, would inherit.  (Id.; AC ¶ 11.)  In exchange, Frederica was to execute a Last Will and Testament naming Stanley as the beneficiary of her estate.  (AC Ex. 1, at 33–34.)  Should Stanley predecease her, the estate would go to the Theas.  (Id.)  Under the terms of the Agreement, neither party was to alter or revoke their Last Will and Testament without the written consent of the other.  (Id. at 2.)  On January 12, 1996, Stanley executed a Last Will and Testament in accordance with the Agreement.  (Id. ¶ 15.)  On April 13, 1995, Frederica executed a Last Will and Testament in accordance with the Agreement.  (See id.; AC ¶ 17.)

On September 1, 1998, Stanley passed away, predeceasing Frederica.  (AC ¶ 20.)  Pursuant to Stanley's Last Will and Testament, which conformed to the Agreement, Frederica

- 2 -

SPA-3

inherited the majority of Stanley's estate.  (See id. ¶ 22.)  After Stanley's death, Frederica created

the Frederica Fisher Thea Revocable Trust (the "Trust").  (Id. ¶ 35.)  The Trust named defendant

Neil Kleinhandler as the sole trustee, and the New School as the sole remainder beneficiary of

the Trust.  (Id. ¶¶ 4–5.)  Subsequently, Frederica transferred all, or substantially all, of her assets

into the Trust.  (Id. ¶¶ 38–39.)

　　　　　For the remainder of Frederica's life, the Trust managed the assets for her benefit.

(See id. ¶¶ 42–47.)  Frederica passed away on or about February 4, 2012.  (Id. ¶ 50.)  At the time

of her death, Frederica was a resident of California.  (See id. ¶ 49.)  After Frederica's death,

Kleinhandler was contacted by law enforcement officials and arranged for the disposition of

Frederica's body.  (Id. ¶¶ 55, 57.)  Kleinhandler did not inform the Theas of Frederica's death

and, since her death, has not administered the Trust for their benefit.  (Id. ¶ 65.)

　　　　　Since Frederica's death, no probate proceedings have been initiated regarding her

estate.  (Id. ¶ 66.)  The Theas request that this Court declare that Frederica and the Trust's assets

rightfully belong to them, and any transfers of assets in violation of the Agreement, or

subsequent to Frederica's death are null and void.  (Id. ¶¶ 84–88.)  The Theas also allege that the

transfer of assets into the Trust was a violation of the Agreement and, consequently, the assets

were placed in a constructive trust for their benefit.  (Id. ¶¶ 95–99.)  The Theas further request an

equitable accounting in order to determine the assets that rightfully belong to Frederica's estate.

(Id. ¶¶ 104–06.)  Finally, the Theas allege that Kleinhandler, as the personal representative of

Frederica's estate, breached a fiduciary duty toward them by not administering her assets in their

interest.  (Id. ¶¶ 109–11.)

　　　　　Donald Thea is a citizen of Massachusetts.  (Id. ¶ 1.)  Deborah Thea is a citizen of

California.  (Id. ¶ 2.)  Kleinhandler is a citizen of New York and the sole trustee of the Fund.  (Id.

SPA-4

¶¶ 3–4.)  The New School is a not-for-profit organization located in New York.  (Id. ¶ 5.)

Defendant Eric Schneiderman, the Attorney General of New York, is named as a party pursuant

to the New York Estate Powers and Trusts Law § 8-1.4 and is a citizen of New York.  (Id. ¶ 8.)

Jurisdiction is based on diversity of citizenship.  See 28 U.S.C. § 1332(a).

LEGAL STANDARDS

I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1)[, Fed. R. Civ. P.,] when the Court lacks the statutory or constitutional power to

adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting

jurisdiction bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence.  Id.  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), a district court . . . may refer to evidence outside the pleadings."  Id.  However, a court

must accept all material factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635,

638 (2d Cir. 2005); Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.

1992).

II.   Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim upon which relief can

be granted, "a complaint must contain . . . sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint,

courts draw all reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust

Litig., 502 F.3d at 50.  Legal conclusions, however, are not entitled to any presumption of truth,

and a court assessing the sufficiency of a complaint disregards them.  Iqbal, 556 U.S. at 678.

- 4 -

SPA-5

Case 1:13-cv-04895-PKC   Document 43   Filed 05/13/14   Page 5 of 10

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

DISCUSSION

I.   The Court Is Unable to Adjudicate the Theas' Declaratory Judgment Claim.

The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., permits federal courts to declare the "rights and other legal relations" of parties to an "actual controversy." An "actual controversy" is deemed to exist when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In determining whether subject matter jurisdiction exists for a declaratory judgment action, a court must "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." Granti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 67 (2d Cir. 2012). Thus, "'a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." Id. at 68 (quoting Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998)).

According to the AC, the Theas request a declaration against Kleinhandler and the Trust that "any and all property or assets or accounts of Frederica and/or the Trust are their rightful property, and theirs alone." (AC ¶ 84.) For the Court to issue such a declaration, it must reach two conclusions. First, the Court must find that the Theas are the proper beneficiaries of Frederica's estate. Second, the Court must find that the Trust assets are part of Frederica's estate. These two findings encapsulate two related causes of action. The first cause of action

- 5 -

SPA-6

may be characterized as an action for specific performance to enforce the Agreement, akin to a breach of contract action. See Tutunjian v. Vetzigian, 299 N.Y. 315, 319 (1949). The second cause of action is to invalidate the Trust, which is an action to recover estate property. See In re Estate of Schneiderman, 963 N.Y.S.2d 250, 251–52 (1st Dep't 2013).

   a. <u>The Action to Enforce the Agreement</u>

   The Theas argue that, as beneficiaries under the Agreement, they have standing to directly bring an action against Kleinhandler, as trustee of the Trust, to enforce the Agreement. An action to enforce a contract to make a will is typically prosecuted in two stages. An action is first brought by putative beneficiaries against an estate. See Glass v. Battista, 43 N.Y.2d 620, 625 (1978); Rich v. Mottek, 11 N.Y.2d 90, 93–94 (1962); Tutunjian, 299 N.Y. at 319. Once the validity and enforceability of an agreement are established, a court may then use its equitable powers to compel performance by parties in possession of estate assets of the obligations assumed by the decedent, who are deemed to hold the estate as a resulting trust in favor of the plaintiffs. Tutunjian, 299 N.Y. at 320–21. The resulting trust may be enforced through an action brought on behalf of the estate against parties holding estate assets. See Di Lorenzo v. Ciancio, 373 N.Y.S.2d 167, 167 (2d Dep't 1975). A beneficiary may consolidate the actions by bringing suit against both the estate and those holding estate assets in one action. See Kates v. Yeshiva Univ., 13 N.Y.2d 805, 809–12 (1963); Tutunjian, 299 N.Y. at 319.

   In an action brought by putative beneficiaries to enforce an agreement, before ordering the transfer of assets, a court must first find an estate in breach and compel the executor to enforce the resulting trust. See Glass, 43 N.Y.2d at 625 ("Since the [decedent] breached the agreement by executing a will other than that agreed upon, the Appellate Division properly compelled the [decedent's] executors to fulfill the agreed upon testamentary disposition."); Rich, 11 N.Y.2d at 94 ("In other words, if the survivor of the two testators breaches the contract by

- 6 -

SPA-7

executing a will other than that agreed upon, the courts will compel his executors to 'perform the contract.'").  Thus, an estate's administrator, or its executor, is a necessary party.  See, e.g., Rich, 11 N.Y.2d at 94 (executor as a defendant in an action to enforce a contract); Di Lorenzo, 373 N.Y.S.2d at 167 (executor as a plaintiff in an action to enforce a resulting trust).

In the present action, the Theas have not named the representative of Frederica's estate as a defendant.  The Theas do allege that Kleinhandler acted as "the personal representative of Frederica's estate," but do not allege that he is the administrator or executor of Frederica's estate as authorized under the law of California, or any other state.  (See AC ¶ 63.) Furthermore, they have not named him as a defendant in this capacity.

According to the AC, no probate proceedings "of any sort" have been initiated regarding Frederica's estate.  (Id. ¶ 66.)  As such, in determining whether Kleinhandler has the authority to administer the estate, the Court looks to the law of California, the place where Frederica was domiciled at the time of her death.  Cal. Prob. Code § 7051.  According to the California Probate Code, "[a] person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective."  Id. § 8400(a).  An appointment is effective when the representative has been "issued letters."  Id.  Aside from the allegation that Kleinhandler acted on behalf of the estate, the AC is silent as to whether Kleinhandler had been appointed, or whether the appointment was effective.  Consequently, the Court cannot conclude that it has authority over Frederica's estate through Kleinhandler.  See N.Y. Est. Powers & Trusts Law § 11-3.1 ("Any action, other than an action for injury to person or property, may be maintained by and against a personal representative in all cases and in such manner as such action might have been maintained by or against his decedent."); Dearborn v. Peugeot Auto Imp. Co., 155 N.Y.S. 769, 772 (3d Dep't 1915) ("An executor or administrator

- 7 -

SPA-8

stands in the shoes of the deceased . . . ."). Without the ability to bind Frederica's estate, this Court does not have the ability to declare any estate assets to be the property of the Theas.

The Theas assert that they have found a copy of Frederica's will that may be admitted to probate in California. This will allegedly names the Theas as executors of the will and sole beneficiaries. (See AC ¶ 18.) Assuming the will is admitted to probate and the Theas are properly named executors and beneficiaries, they would then have standing to bring their action against any holders of estate assets in this Court. See Di Lorenzo, 373 N.Y.S.2d at 167. As this Court does not have the authority to probate the will, the proper avenue for the Theas to adjudicate their rights under the will is through the probate courts of California and New York. See Lefkowitz v. Bank of N.Y., 528 F.3d 102, 105 (2d Cir. 2007) ("The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction.").

    b.  The Action to Invalidate the Trust

The Theas allege that Frederica wrongfully transferred estate assets into the Trust. When assets are outside the control of an estate, an action may be brought against a third party to recover the assets. See Schneiderman, 963 N.Y.S.2d at 251–52; Orentreich v. Prudential Ins. Co. of Am., 713 N.Y.S.2d 330, 332 (1st Dep't 2000). Being on behalf of the estate, such an action, absent extraordinary circumstances, may only be brought by an executor or administrator of an estate. Garmon v. Cnty. of Rockland, No. 10 Civ. 7724(ALC)(GW), 2013 WL 541380, at *3 (Feb. 11, 2013) (citing Palladino v. Metro. Life Ins. Co., 590 N.Y.S.2d 601, 602 (3d Dep't 1992)); Lewis v. DiMaggio, 981 N.Y.S.2d 844, 845 (3d Dep't 2014) (citing McQuaide v. Perot, 223 N.Y. 75, 79–80 (1918)). "[E]xtraordinary circumstances may be implicated where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate." Lewis, 981 N.Y.S.2d at 845.

- 8 -

SPA-9

As discussed above, the Theas have not been named executors of Frederica's estate, and it is not alleged that Kleinhandler has been appointed as the estate's administrator under the law of any jurisdiction.  As such, the existence of exceptional circumstances has not been sufficiently pleaded.  Consequently, the Theas do not have standing to invalidate the Trust, or obtain a declaration that it constitutes part of Frederica's estate.

II.   The Court Is Unable to Adjudicate the Theas' Remaining Claims.

In addition to a request for declaratory judgment, the AC also requests the Court to institute a constructive trust over the assets of the Trust, order an equitable accounting to determine which assets belong the Frederica's estate, and find that Kleinhandler breached his fiduciary duty toward them by failing to administer the estate for their benefit.  (AC ¶¶ 99, 106, 109–11.)  These claims are all premised on a finding that the Theas are Frederica's beneficiaries.  (See id. ¶¶ 94–95, 101, 108–09.)  Furthermore, a finding that Kleinhandler breached his fiduciary duty is premised on a finding that he was the personal representative of Frederica's estate.  (See id. ¶ 108.)

As discussed above, the AC does not allege that an administrator of Frederica's estate has been duly appointed and none is a party to the action.  No court has identified Frederica's beneficiaries.  As the Court is unable to adjudicate the Theas' rights regarding the estate, it necessarily is unable to compel the creation of a constructive trust, or order an equitable accounting, on the Theas' behalf.  In addition, because the Court is unable to determine that Kleinhandler is the representative of Frederica's estate, it may not find that, in this role, he breached his fiduciary duty toward either the estate or the Theas as its putative beneficiaries.

III.   Leave to Further Amend Is Denied

The Theas ask for leave to further amend in the event the Court dismisses the AC. The Court has concluded a full adjudication of the Theas' claims requires that a representative of

- 9 -

SPA-10

Frederica's estate be appointed.  If, during the pendency of this motion, an executor or administrator has been appointed, then this may warrant an amendment.  If none has been appointed, then the proper remedy at this juncture—more than two years after the death of Frederica, is dismissal without prejudice.

CONCLUSION

For the foregoing reasons, Kleinhandler and the New School's motions to dismiss (Docket # 32, 35) are GRANTED.  The Theas' claims are dismissed without prejudice.  The executor or administrator of the estate may seek leave to amend within 21 days.  If no motion is filed within 21 days, then the Clerk is directed to enter judgment for the defendants.

SO ORDERED.

P. Kevin Castel<br>United States District Judge

Dated: New York, New York<br>
      May 12, 2014

- 10 -

SPA-11

Case 1:13-cv-04895-PKC   Document 59   Filed 08/01/14   Page 1 of 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DONALD M. THEA and DEBORAH L. THEA,

                 Plaintiffs,

      -against-

NEIL C. KLEINHANDLER, individually and as
trustee of the FREDERICA FISHER THEA
REVOCABLE TRUST, NEW SCHOOL
UNIVERSITY, and ERIC T. SCHNEIDERMAN
as Attorney General of the State of New York,

                 Defendants.
-----------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8 - 1 -14_

13-cv-4895 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

      Plaintiffs Donald Thea and Deborah Thea (the "Theas") initially brought this

action in their individual capacity against defendants Neil Kleinhandler, the Frederica Fisher

Thea Revocable Trust, the New School University (the "New School"), and Eric Schneiderman,

as Attorney General of the State of New York. The Theas had requested a declaration as to their

rights to property allegedly belonging to the estate of Frederica Fisher Thea, their stepmother, as

well as other relief.

      In a Memorandum and Order dated May 12, 2014, the Court dismissed the Theas'

claims without prejudice for lack of subject matter jurisdiction. The Theas now move for leave

to amend, asserting that they have been duly appointed administrators of Frederica's estate. The

proposed amended complaint asserts claims on behalf of the Theas in their individual capacity,

in their capacity as creditors of the estate, and in their capacity as special administrators of the

estate. For reasons explained, the Theas' motion is denied.

SPA-12

BACKGROUND

The following facts are taken from the Proposed Second Amended Complaint (the "PSAC"), documents incorporated by reference in the PSAC, and matters of which judicial notice may appropriately be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).  All facts are assumed to be true for the purpose of deciding plaintiffs' motion to amend.  All reasonable inferences are drawn in favor of the plaintiffs.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam); Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

In or about 1985, Stanley Thea ("Stanley") married his third wife, Frederica Fisher Thea ("Frederica").  (Viola Decl. Ex. A ("PSAC") ¶ 13.)  On April 13, 1995, Stanley and Frederica executed an agreement under which they agreed to execute mutually beneficial wills (the "Agreement").  (See id. ¶¶ 14, 22, 24.)  The Agreement was subsequently modified on January 12, 1996, to reflect changes made to Stanley's Last Will and Testament.  (Id. ¶ 15.)  Under the terms of the Agreement, Stanley was to execute a will that bequeathed the majority of his estate to Frederica.  (PSAC Ex. B, at 2–4.)  In the event that Frederica were to predecease Stanley, the Theas, his children by his first marriage, would inherit.  (Id.; PSAC ¶ 13.)  In exchange, Frederica was to execute a Last Will and Testament naming Stanley as the beneficiary of her entire estate.  (PSAC Ex. B, at 1, 32–33.)  Should Stanley predecease her, the entire estate would go to the Theas.  (Id.)  Under the terms of the Agreement, neither party was to alter or revoke their Last Will and Testament without the written consent of the other.  (Id. at 1.)  On January 12, 1996, Stanley executed a Last Will and Testament in accordance with the Agreement.  (Id.)  On April 13, 1995, Frederica executed a Last Will and Testament in accordance with the Agreement.  (See id.; PSAC ¶ 15.)  The Agreement and wills were all

- 2 -

SPA-13

executed in New York.  (See PSAC Ex. B, at 1.)  At the time they entered into the Agreement, both Stanley and Frederica were residents of New York.  (See id. at 2, 32.)

On September 1, 1998, Stanley passed away, predeceasing Frederica.  (PSAC ¶ 29.)  Pursuant to Stanley's Last Will and Testament, which conformed to the Agreement, Frederica inherited the majority of Stanley's estate.  (See id. ¶ 31.)  The estate included property located in Manhattan and Queens.  (PSAC Ex. B, at 3.)  After Stanley's death, but no later than December 2002, Frederica created the Frederica Fisher Thea Revocable Trust (the "Trust").  (PSAC ¶ 44.)  The Trust named Frederica and defendant Neil Kleinhandler as co-trustees and the New School as the sole remainder beneficiary of the Trust.  (Id. ¶¶ 7, 47.)  Subsequently, Frederica transferred all, or substantially all, of her assets into the Trust.  (Id. ¶¶ 49, 51–52, 57.)

For the remainder of Frederica's life, the Trust managed the assets for her benefit.  (See id. ¶¶ 51–58.)  Among the actions taken by the Trust in managing the assets were the sale of the New York properties to facilitate the purchase of property in California.  (See id. ¶¶ 51–54, 56.)  Frederica passed away on or about February 4, 2012.  (Id. ¶ 59.)  At the time of her death, Frederica was a resident of California.  (See id. ¶ 58.)  After Frederica's death, Kleinhandler was contacted by law enforcement officials and arranged for the disposition of Frederica's body.  (Id. ¶¶ 65, 67.)  Kleinhandler did not inform the Theas of Frederica's death and, since her death, has not administered the Trust for their benefit.  (Id. ¶ 75.)

The Theas brought suit against Kleinhandler on July 15, 2013.  (Docket # 1.)  In their Complaint, the Theas requested that the Court declare that Frederica and the Trust's assets rightfully belonged to them, and that any transfers of assets in violation of the Agreement, or subsequent to Frederica's death were null and void.  (Am. Compl. ¶¶ 84–88, Docket # 12.)  The Theas also alleged that the transfer of assets into the Trust was a violation of the Agreement and

- 3 -

SPA-14

void pursuant to section 7-3.1 of the New York EPTL.  (Id. ¶¶ 95–97.)  The Theas further

asserted that Frederica's breach of the Agreement resulted in the Trust assets being placed in a

constructive trust for their benefit.  (Id. ¶¶ 98–99.)  The Theas also requested an equitable

accounting in order to determine the assets that rightfully belonged to Frederica's estate.  (Id.

¶¶ 104–06.)  Finally, the Theas alleged that Kleinhandler, as the personal representative of

Frederica's estate, breached a fiduciary duty toward them by not administering her assets in their

interest.  (Id. ¶¶ 109–11.)  At that time, no probate proceedings had been initiated regarding her

estate.  (PSAC ¶ 76.)

        In the May 12 Memorandum and Order, the Court dismissed the Theas' claims for

lack of subject matter jurisdiction because full adjudication of the Theas' claims required a

representative of Frederica's estate to be a party.  Thea v. Kleinhandler, No. 13-cv-4895 (PKC),

2014 WL 2111637, at *6 (May 13, 2014).  The Memorandum and Order allowed "an

administrator or executor of [Frederica's] estate" to seek leave to amend within twenty-one days

of the Order.  Id.

        Subsequently, the Theas initiated probate proceedings regarding Frederica's estate

in the Superior Court of California, County of Monterey.  (See id. ¶ 77; PSAC Ex. A, at 1.)  A

hearing was scheduled for August 13, 2014.  (Viola Decl. ¶ 8.)  As this date was beyond the

twenty-one-day time period provided by the Court, the Theas filed an "Ex-Parte Petition for

Letters of Special Administration" in order to continue the action in this Court.  (Viola Decl. ¶ 8;

Viola Decl. Ex. B, at 1.)  A hearing was scheduled for May 28, 2013.  (Viola Decl. Ex. B, at 1.)

Notice was mailed to all parties, including Kleinhandler and the New School, via Federal

Express on May 23, 2013, the Friday before the Memorial Day holiday.  (Id. at 2–3.)

SPA-15

Prior to the May 28, 2013, hearing, counsel for the New School submitted a letter to the Superior Court objecting to the Theas' appointment.  (Harris Aff. Ex. 2, at 3–4.)  In the letter, Counsel asserted that the "special circumstances" warranting emergency relief were "entirely of [the Theas'] own creation" and further noted that the "factual circumstances surrounding Frederica's Will [were] far from clear-cut."  (Turkle Aff. Ex. 3, at 2–3.)  Accordingly, the New School requested the hearing be postponed so that interested parties could "review [the Theas'] request, confer with counsel, retain counsel in California if needed, and have a full and fair opportunity to be heard on [the Theas'] application."  (Id. at 3.)

The Theas and Frederica's step brother, Ned Gershenson, appeared at the hearing.  (Harris Aff. ¶ 7; Harris Aff. Ex. 2, at 3.)  Counsel for the New School attempted to appear at the hearing telephonically, but was unable to do so.  (See Harris Aff. Ex. 2, at 3.)  At the hearing, Judge Kingsley, the judge assigned to the California action, reviewed the issues raised in the New School's letter and noted that they did "not relate to [the appointment]."  (Id. at 1, 4.)  Consequently, the Theas were allowed to proceed.  (Id. at 4.)  Judge Kingsley noted that allowing the Theas to proceed did "not mean that we're making a finding in anybody's favor at this point."  (Id. at 4.)  Gershenson did not object to the Theas' appointment.  (Id. at 5.)

After the hearing, Judge Kingsley approved the Theas' petition and issued an Order for Probate which appointed them special administrators of Frederica's estate.  (Id. at 5.)  Under the terms of the appointment, the Theas were granted the authority to (1) "take possession of all real and personal property of the decedent and to preserve it from damage, waste and injury;" (2) "commence and maintain or defend suite and other legal proceedings involving the estate;" and (3) "collect all claims, rents and other income belonging to the estate."  (PSAC Ex. A, at 2.)  Letters of Appointment were issued the same day.  (Id. at 3–4.)

SPA-16

Case 1:13-cv-04895-PKC   Document 59   Filed 08/01/14   Page 6 of 15

On June 2, 2014, the Theas sought leave to file a Second Amended Complaint. (Docket # 44.)  The PSAC alleges six distinct causes of action, brought by the Theas in various capacities.  Count I of the PSAC is brought by the Theas in their individual capacity and requests a declaration that the assets of the Trust belong to them.  (PSAC ¶¶ 95–100.)  Count II of the PSAC, brought by the Theas as special administrators on behalf of Frederica's estate, requests a declaration that the assets of the Trust are estate property.  (Id. ¶¶ 106–11.)  Count III of the PSAC is brought by the Theas as creditors of Frederica's estate and requests a declaration that any transfers of assets to the Trust are null and void.  (Id. ¶¶ 116–19.)  Counts IV and V request that the Court impose a constructive trust over the Trust assets and order an equitable accounting. (Id. ¶¶ 121–135.)  Finally, Count VI alleges that Kleinhandler, by failing to administer Frederica's estate for the Theas' benefit, breached his fiduciary duty toward Frederica's estate, the Theas individually, and the Theas as creditors of the estate.  (Id. ¶¶ 136–141.)

Donald Thea is a citizen of Massachusetts.  (Id. ¶ 1.)  Deborah Thea is a citizen of California.  (Id. ¶ 2.)  At the time of her death, Frederica was a citizen of California.  (See id. ¶ 58.)  Kleinhandler is a citizen of New York and the sole trustee of the Trust.  (Id. ¶¶ 5–6.)  At all times of its existence, the Trust has been governed by New York law.  (Id. ¶ 45–46.)  The New School is a not-for-profit organization located in New York.  (Id. ¶ 7.)  Defendant Eric Schneiderman, the Attorney General of New York, is named as a party pursuant to the New York Estate Powers and Trusts Law § 8-1.4 and is a citizen of New York.  (Id. ¶ 10.)  Jurisdiction is based on diversity of citizenship.  See 28 U.S.C. § 1332(a).

LEGAL STANDARD

Rule 15(a)(2), Fed. R. Civ. P., provides that a party may amend its pleading with leave of the court, and that a "court should freely give leave when justice so requires."  "This permissive standard is consistent with our strong preference for resolving disputes on the

SPA-17

merits." Williams v. Citigroup. Inc., 659 F.3d 208, 212–13 (2d Cir. 2011) (internal citation and quotation marks omitted).  "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to prevent an amendment prior to trial.  Dougherty, 282 F.3d at 87–88 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  An amendment to a pleading is considered futile "if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  Id. at 88.

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted, "a complaint must contain . . . sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant.  See Elevator Antitrust Litig., 502 F.3d at 50.  Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them.  Iqbal, 556 U.S. at 678.  Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Chambers, 282 F.3d at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting

SPA-18

Chambers, 282 F.3d at 152–53)).  "[A] plaintiff's reliance on the terms and effect of a document

in drafting the complaint is a necessary prerequisite to the court's consideration of the document

on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153.

"[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute

exists regarding the authenticity or accuracy of the document."  DiFolco, 622 F.3d at 111

(internal quotation marks and citation omitted).

### CHOICE OF LAW

As Frederica was a resident of California at the time of her death, issues regarding

the governance of her estate, such as the distribution of estate assets to beneficiaries or the

appointment of an executor, are governed by California law.  Cal. Prob. Code § 7051.  Though

Frederica was domiciled in California, the Trust documents state that it is governed by New

York law.  (PSAC ¶ 45.)  Accordingly, claims directed against the Trust independent of its

alleged status as part of Frederica's estate would be governed by New York law.

The parties disagree as to whether New York or California law should apply to

the claims regarding the Agreement.  As jurisdiction is premised on diversity of citizenship, the

Court looks to the choice of law rules of New York, the forum state.  Liberty Synergistics Inc. v.

Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co.,

313 U.S. 487, 494–97 (1941)).  In making a choice of law determination in contract cases, courts

in New York use a "center of gravity" or "grouping of contacts" analysis.  In re Allstate Ins. Co.,

81 N.Y.2d 219, 226 (1993).  Factors to be considered include "the place of contracting,

negotiation and performance; the location of the subject matter of the contract; and the domicile

of the contracting parties."  Id. at 227.

At the time of contracting, Stanley and Frederica were both residents of New

York and entered into the Agreement there.  (PSAC Ex. B, at 1–2, 32.)  Further, at the time of

SPA-19

contracting, the Agreement concerned property located in New York.  (Id. at 3.)  At the time of

her death, Frederica was a resident of California and owned property there.  (PSAC ¶¶ 56, 58.)

As the majority of events surrounding the formation and execution of the Agreement took place

in New York, the Court concludes that it is the "center of gravity" of the contract.  Accordingly,

the Court will apply New York law to claims concerning the execution of the Agreement.

DISCUSSION

I.   The Theas' Status as Special Administrators

The New School asserts that, because it was unable to participate in the May 28,

2014, hearing, it was denied of an opportunity to be heard, making the method by which the

Theas obtained their alleged appointment in the Superior Court of California "fundamentally

unfair."

It is "well settled" that a federal court may not "entertain an action that would

interfere with pending probate proceedings in a state court."  Ashton v. Josephine Bay Paul & C.

Michael Paul Found., Inc., 918 F.2d 1065, 1071 (2d Cir. 1990).  Further, federal courts are

required to give full faith and credit to judicial proceedings of state courts.  28 U.S.C. § 1738.

As the Theas were appointed special administrators as part of ongoing probate proceedings in

state court in California, this Court is bound by the state court's actions and recognizes that the

Theas were given authority specifically to prosecute the instant action on behalf of Frederica's

estate.  (PSAC Ex. A, at 2).  Consequently the Court concludes that, unless and until a competent

court finds otherwise, the Theas have the authority to act on behalf of Frederica's estate in the

instant action.

II.  The Theas' Claims

The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., permits federal courts to

declare the "rights and other legal relations" of parties to an "actual controversy."  An "actual

- 9 -

SPA-20

controversy" is deemed to exist when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In determining whether subject matter jurisdiction exists for a declaratory judgment action, a court must "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." Granti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 67 (2d Cir. 2012). Thus, "'a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." Id. at 68 (quoting Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998)).

a. The Theas' Claim in their Individual Capacity

Count I, the declaratory judgment claim brought by the Theas in their individual capacity, is identical to the declaratory judgment claim presented in the Amended Complaint. (Compare Am. Compl. ¶¶ 80–90 with PSAC ¶¶ 91–100.) As the Court noted in the May 12 Memorandum and Order, the Theas do not have standing to bring such an action in their individual capacity. Thea, 2014 WL 2111637, at *4. Accordingly Count I would not withstand a motion to dismiss and allowing the Theas to include it in an amended pleading would be futile.

b. The Theas' Claim in their Capacity as Special Administrators

Count II, which requests a declaration that the Trust assets are part of Frederica's estate, is brought by the Theas in their capacity as Special Administrators. In this role, as estate representatives, they have standing to bring the action. See Di Lorenzo v. Ciancio, 373 N.Y.S.2d 167, 170 (2d Dep't 1975). Kleinhandler and the New School do not challenge the Theas's

- 10 -

SPA-21

standing to bring this claim as estate representatives, but argue that it is time barred under section 366.3 of the California Code of Civil Procedure and section 213 of the New York CPLR.

The parties dispute whether the California or New York statute of limitations governs the Theas' claims.  As the instant action is premised on diversity of citizenship, the Court will apply the statute of limitations of the forum state, here New York.  Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 719 (2d Cir. 2002).  "Under New York's 'borrowing statute,' [CPLR § 202], a case filed by a non-resident plaintiff requires application of the shorter statute of limitations as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued."  Id.

Under New York law, a cause of action sounding in contract accrues "at the time and in the place of the injury."  Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999). When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  Id.  As special administrators to Frederica's estate, the Theas stand in the estate's shoes to prosecute its claims.  Because Frederica was a citizen of California at the time of her death, the Theas are considered to be citizens of California for the purposes of pursuing the claim.  28 U.S.C. § 1332(c)(2); (See PSAC ¶ 58.)  As the claim alleges that transfers of assets from Frederica's estate to the Trust were a violation of the Agreement, the Court concludes that the PSAC alleges harm sustained by the estate.  (See PSAC ¶¶ 108–09.)

The Theas argue that, though the estate suffered harm, the property at issue, namely the Trust assets, are located in New York.  When a complaint seeks the recovery of property in New York, New York law will generally apply.  Wyatt v. Fulrath, 16 N.Y.2d 169, 173 (1965).

- 11 -

SPA-22

According to the PSAC, the trust is alleged to have sold its New York properties and purchased property in California.  (PSAC ¶¶ 51–54, 56.)  No other tangible property is alleged to be part of Frederica's estate.  (See id.)  According to Frederica's alleged Last Will and Testament, the Theas were to inherit the entire estate.  (PSAC Ex. B, at 32–33.)  The Last Will and Testament makes no reference to specific property.  (See id.)  As Frederica was free to manage her assets as she saw fit, the sale of the New York properties during her lifetime would not constitute a breach of the Agreement.  Had Frederica sold the New York properties, acquired the California property, but left that California property to the Theas, they would have no claim to the property or to the proceeds.  Indeed, it is the California property, or the proceeds of any sale that the Theas seek in this action.

The Theas allege that Frederica transferred the majority of her assets to a revocable trust, appointing herself and Kleinhandler as co-trustees.  (PSAC ¶¶ 47, 49, 57.)  As the trust was revocable, Frederica had control over the assets until her death, at which time the trust became irrevocable.  See In re Malasky, 736 N.Y.S.2d 151, 152–53 (3d Dep't 2002).  Thus, though Frederica established the Trust at some point prior to December 2002, she could have revoked the trust at any time until her death on February 4, 2012.  (See PSAC ¶¶ 44, 59.)  At that time, Frederica's estate was no longer in control of the Trust assets and can be said to have suffered a loss.  See Rubin v. Irving Trust Co., 305 N.Y. 288, 298 (1953) (noting that an action to enforce an agreement to make a will is instituted after the death of the promisor).

Consequently, because Frederica was a resident of California, in control of real property in California, and is not alleged to have had control over any property in New York, the non-economic harm suffered by the estate concerns assets located in California.  As such, the Court concludes that the claim accrued in California, the location of Frederica's estate.

- 12 -

SPA-23

Under section 366.3 of the California Code of Civil Procedure, an action that "arises from a promise or agreement with a decedent to distribution from an estate . . . may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." Cal. Civ. Proc. Code § 366.3(a). The limitations period of one year may not be tolled or extended for "any reason," with limited exceptions. Cal. Civ. Proc. Code § 366.3(b). According to the PSAC, Frederica died on February 4, 2012, and the Theas initially brought suit on July 15, 2013, more than one year afterwards. (PSAC ¶ 59; Docket # 1.)

The Theas do not dispute that had they directly brought their claim against Frederica's estate in California under California law, it would be subject to section 366.3. To avoid application of section 366.3, they assert that it only applies to claims brought against an estate, and not to claims brought on behalf of an estate.

California courts have held that section 366.3 reaches "any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner." Ferraro v. Camarlinghi, 161 Cal. App. 4th 509, 555 (6th Dist. 2008). Claims that have been precluded by the California courts include claims of breach of contract, breach of express trust, fraud, undue influence, unjust enrichment, constructive trust, conversion, interference with advantageous relations, declaratory and injunctive relief, an accounting, and claims by creditors against an estate. Id. at 527; In re Estate of Ziegler, 187 Cal. App. 4th 1357, 1365 (4th Dist. 2010).

There is nothing in the language of section 366.3 that limits its application based upon the identity of the party bringing or defending the claim. If the action "arises from a promise or agreement with a decedent to distribution from an estate," then the limitations period in section 366.3 would apply. The plain language of the statute reads on the Theas' claim.

- 13 -

SPA-24

The legislative history is also instructive.  When section 366.3 was passed, the California Senate Judiciary Committee noted that the statute of limitations applicable "to a claim against a decedent's estate based upon a contract to make or to revoke a will or trust" was not clear and depended on "the theory used to establish the contract."  See S. Comm. on Judiciary, Analysis of Assemb. B. No. 1491 (1999-2000 Reg. Sess.), as amended Jan. 3, 2000, at 2, 11. The California Senate Judiciary Committee further stated that requiring actions to be filed within one year from the date of death would bring "consistency to the statutes of limitations for enforcement of claims against a decedent" and that allowing a claim to be commenced later would "bring hardship to beneficiaries and administrators alike."  Id. at 11–12.  Thus, section 366.3 was intended to harmonize the various statutes of limitations already in use for causes of action related to an agreement to make a will and to make them consistent with claims against an estate that had accrued before death.

The Theas argue that, even if section 366.3 applies to their claims, Kleinhandler should be equitably estopped from invoking the defense.  Under California law, the doctrine of equitable estoppel may apply to section 366.3.  McMackin v. Ehrheart, 194 Cal. App. 4th 128, 140.  To invoke the doctrine, the Theas would need to allege that Kleinhandler, through action or inaction, prevented them from timely bringing suit.  See id. at 142.  Though the PSAC notes that Kleinhandler did not inform the Theas of Frederica's death, despite an obligation to do so, it does not specify when the Theas learned of her death and thus knew they potentially had a claim.  As this information is not present in the PSAC, the Court is unable to conclude that Kleinhandler should be estopped from invoking the statute of limitations in this instance.

Therefore, the Court concludes that allowing the Theas to amend their complaint to add Count II would be futile.

- 14 -

SPA-25

Case 1:13-cv-04895-PKC   Document 59   Filed 08/01/14   Page 15 of 15

c.   The Theas' Remaining Claims

The Theas' remaining claims all derive from the alleged Agreement between Stanley and Frederica and are dependent on a finding that the Trust assets are rightfully part of the estate.  As the underlying claim against Kleinhandler and the Trust is untimely, the remaining claims would not withstand a motion to dismiss.  Consequently, allowing the Theas to amend their complaint to add the remaining claims would also be futile.

CONCLUSION

For the foregoing reasons, the Theas motion for leave to amend (Docket # 46) is DENIED.  The Clerk shall enter judgment for the defendants.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
         August 1, 2014

- 15 -

SPA-26

Case 1:13-cv-04895-PKC   Document 60   Filed 08/04/14   Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Donald M. Thea and Deborah L. Thea,
                                   Plaintiffs,

                     -against-

Neil C. Kleinhandler, individually and as trustee
of the Frederica Fisher Thea Revocable Trust,
New School University, and Eric T.
Schneiderman as Attorney General of the
State of New York,
                                   Defendants.
-------------------------------------------------------------X

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED 08/04/2014

13 **CIVIL** 4895 (PKC)

**JUDGMENT**

Plaintiffs having filed a motion for leave to amend the Complaint (Doc. #46), and the matter

having come before the Honorable P. Kevin Castel, United States District Judge, and the Court, on

August 1, 2014, having rendered its Memorandum and Order (Doc. #59) denying the Theas motion

for leave to amend (Docket #46) and directing the Clerk to enter judgment for the Defendants, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum and Order dated August 1, 2014, the Theas motion for leave to amend

(Docket #46) is denied; accordingly, the case is closed.

**Dated:** New York, New York
            August 4, 2014

**RUBY J. KRAJICK**

_____
**Clerk of Court**

BY:      *K. Mango*
_____
**Deputy Clerk**